IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| 16 COBALT LLC | : | C.A.No. 1:06CV00175 |
| | : | Judge Colleen Kollar-Kotelly |
| vs. | : | |
| | : | |
| HARRISON CAREER INSTITUTE | : | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT

### BACKGROUND

Harrison Career Institute ("HCI"), the operator of proprietary schools in Pennsylvania, New Jersey, Delaware and Virginia, sought to establish a school campus in the District of Columbia. To this end, it entered into a lease agreement with 1627 K Associates Limited Partnership for two floors of a prime commercial office building located at 1627 K Street in Northwest Washington. The lease term commenced on January 1, 2004.

By July of 2005, it was apparent to HCI that it would be unable to secure certain government approvals essential to the operation of the Washington campus. Marie Nasuti, Esquire, counsel for HCI contacted the landlord – now 16 Cobalt LLC as successor to the earlier owner – and sought to terminate the lease. After extensive negotiations, 16 Cobalt LLC and HCI entered into an Unconditional Surrender Agreement on January 10, 2006, and HCI quit the premises.

On January 31, 2006, 16 Cobalt LLC commenced suit against HCI seeking "less than $3,000,000 in damages" and costs. Although Cobalt's manager, Frank Gittleson, and its attorneys had been in constant contact with Marie Nasuti, Esquire, Counsel for HCI, the complaint was served upon HCI's registered agent,

National Registered Agents, Inc. and no copy was sent by either Gittleson or the attorneys to HCI.

When HCI had failed to file any response to the complaint[1], Cobalt sought the entry of a default judgment on March 9, 2006. Again, this filing was served on HCI's registered agent and no copy was provided by Cobalt to HCI or Ms. Nasuti. On March 28, 2006, Cobalt filed its motion seeking the entry of final judgment. As before, this filing was served upon National Registered Agents, Inc. and plaintiff provided no copy to HCI or to Ms. Nasuti. Unfortunately, HCI, because it had ceased doing business in Washington on January 10, 2006, withdrew its registration as a foreign corporation and revoked the authority of National to act as its registered agent on March 1, 2006.

On August 8, 2006, This Court entered judgment in the amount of $1,972,247.62. On August 9, 2006, Frank Gittleson contacted Marie Nasuti to demand payment of the judgment entered the prior day. It was his first attempt to contact Ms. Nasuti since January 10, 2006.

---

[1] HCI had been engulfed in litigation in a matter which commenced in 2003 and resulted in a hearing which began in October of 2005 and did not end until February 14, 2006. There were extensive post hearing matters which required briefing and the production of documents as well as investigative and research obligations. Those efforts continue as of the date of this filing. Ms. Nasuti was directly involved in the litigation of that matter and was away from her office for much of the period between October 2005 and March 2006. While her failure to review the complaint and respond constitutes neglect, under the circumstances, it surely constitutes excusable neglect. Had she or any officer of HCI actually been served with the complaint, she certainly would have responded. As the circumstances existed, she first became aware of these facts when Cobalt's manager contacted her on August 9, 2006 and informed her of the entry of the default on the prior day.

## ARGUMENT

I. **HCI SHOULD NOT SUFFER THE SEVERE PENALTY OF DEFAULT WHERE IT HAS DEFENSES, PLAINTIFF WILL NOT BE PREJUDICED BY THE OPENING OF THE JUDGMENT AND THE FAILURE TO RESPOND WAS DUE TO THE EXCUSABLE NEGLECT OF HCI'S COUNSEL**

"Default judgments are not favored by modern courts, perhaps because it seems inherently unfair to use the court's power to enter and enforce judgments as a penalty for delays in filing. Modern courts are also reluctant to enter and enforce judgments unwarranted by the facts. This may be why a court must hold a hearing on damages before entering a judgment on an unliquidated claim even against a defendant who has been totally unresponsive." *Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir. 1980)(reversing District Court's refusal to set aside default judgment) While, "[i]t is true that the decision whether a default judgment should be set aside is one committed to the sound discretion of the trial court. See, e. g., *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372 (D.C.Cir.1980); *Moldwood Corp. v. Strutts*, 410 F.2d 351 (5th Cir. 1969). Given the strong policies favoring the resolution of genuine disputes on their merits, however, an abuse of discretion in refusing to set aside a default judgment "need not be glaring to justify reversal." *Keegel*, 627 F.2d at 374. Accord, e. g., *H. F. Livermore Corp.*, 432 F.2d at 691." (636 F.2d at 835) In *Jackson v. Beech*, the district court had focused on the neglect of the defendant's attorneys in denying the motion to set aside the default judgment. In its opinion reversing that order, the Circuit Court held:

> In addition, the judge erred in thinking it proper
> to impute the conduct of the attorney to his clients
> in considering the motion to set aside the default
> judgment in the case at bar. Default judgments were

- 3 -

> not designed as a means of disciplining the bar at the expense of the litigants' day in court. As this court pointed out in Barber v. Tuberville, 218 F.2d 34, 36 (D.C.Cir.1954), on a motion to set aside a default or default judgment, "courts have been reluctant to attribute to the parties the errors of their legal representatives." In Barber, the court considered the lawyer negligent in failing to file an answer in one case because settlement negotiations were taking place in another case. The court held that the default judgment should, nevertheless, be set aside because the defendant was not personally negligent.

(636 F.2d at 837). And finally:

> The court below thought negligence by one defendant or by the defendants' attorney sufficient to justify denying a motion to vacate a default judgment. This was error. The trial court should have considered the wilfulness of the default, the possibility of prejudice to the plaintiff if the default judgment was set aside, and the merit of defendants' defense. In analyzing these factors as they appear in the case at bar, the court should have construed all ambiguous or disputed facts in the light most favorable to the defendants. Had this been done, the defendants' motion to vacate the entry of the default judgment would have been granted. We therefore reverse and remand for entry of an order setting aside the default judgment and for further proceedings not inconsistent with this decision.

(636 F.2d at 838). See, also, *Capitol Yacht Club v. Vessel Aviva*, 228 F.R.D. 389 (DCDC 2005 USDCJ Urbina) ("'Default judgment, however, is a very severe sanction and is contrary to the 'judicial system's strong presumption in favor of adjudications on the merits.' *See Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1475 (D.C.Cir.1995). Default judgment is a 'drastic step, normally to be taken only after unfruitful resort to lesser sanctions.' *Id.* at 1478 (citations omitted). Moreover, the sins of an attorney should not be visited upon the innocent client. *Shea*, 795 F.2d at 1077-78."); *Morrison v. International Programs*

*Consortium, Inc.*, 240 F. Supp. 2d 53 (D.C.D.C. 2003, USDCJ Roberts) (denying motion for default where attorney's conduct was "vexatious" and sanctionable).

There is no suggestion in this case of willful refusal to respond. It is clear from the affidavits attached to the motion and the pleadings that just as in *Jackson v. Beech*, the attorney's neglect here was due to her immersion in a very serious and complex litigation matter, and, to some lesser extent, to the fact that plaintiff apparently did not copy counsel on any of the filings in question, even though they were completely aware of her role as counsel for HCI.

II.     HCI HAS A MERITORIOUS DEFENSE TO THE UNDERLYING COMPLAINT

HCI has presented two meritorious defenses. The first is that the plaintiff agreed that upon the execution of the Unconditional Surrender Agreement that HCI would only be responsible for the rent up to that date (January 10, 2006) and no more. Certainly if this is establish it amounts to either a modification to the Unconditional Surrender Agreement or accord and satisfaction. In any event, it would constitute a defense to the action for some $3,000,000.00 in damages.

The second defense has two parts, both dealing with mitigation. It is clear that a claim for future rents under a lease agreement requires proof of reasonable efforts at mitigation of those damages by the landlord in re-renting the premises. *Lennon v. United States Theater Corp.*, 920 F.2d 996 (D.C. Cir. 1990); *D.W.S. Washington Holdings, Inc. v. Jackson*, 739 F. Supp. 19 (D.C.D.C. 1990); *Satin v. Buckley*, 246 A.2d 778 (D.C. Court of Appeals 1968); *McIntosh v. Gitomer*, 120 A.2d 205 (Municipal Court of Appeals, 1956). In the instant case, the premises in question

are immediately and unquestionably rentable. Plaintiff's duty to mitigate commences with the recovery of possession on January 10, 2006. The fact that only a portion of the two floors are presently rented is a reflection of subpar effort on plaintiff's part to re-rent the entire premises. As such, those efforts do not satisfy the requirement of mitigation.

The second part of the mitigation defense is, perhaps, the most significant. Plaintiff's claim for future damages is premature. Plaintiff has calculated the damages throughout the 10 year lease period under the lease agreement. While plaintiff may, under the lease, be entitled to recover the full value of the lease, that recovery is subject to a continuing mitigation requirement *throughout the lease term.* As such, a claim for full future rents in 2006 for a lease period ending in 2014 cannot possibly calculate damages appropriately and the claim for lost rents must be deferred until the completion of the lease term. *McIntosh v. Gitomer, supra.*

*McIntosh v. Gitomer* involved a lease for commercial space where the landlord sued for, *inter alia*, future rents that extended beyond the filing of the action for damages. The trial court entered judgment for the landlord in the full amount and the tenant appealed. On appeal, the Court of Appeals reversed, holding as follows:

> Furthermore, the action for loss or deficiency of rent was premature because the extent thereof cannot be determined until the end of the term. Perhaps a provision could be drawn so as to make the tenant liable for monthly deficits, but the covenant here in question did not so provide. 'The tenant when ejected ceases to be a tenant. What he covenants to pay is the damage, not the rent. To hold him for monthly deficits is to charge him with the obligations of a tenant without any of the privileges.

> He must pay in the lean months, without recouping in the fat ones. He must do this, though it may turn out in the end that there has been a gain and not a loss. A liability so heavy may not rest upon uncertain inference.' Hermitage Co. v. Levine, 248 N.Y. 333, 162 N.E. 97, 98, 59 A.L.R. 1015, 1018. Until the damages are fixed an action therefor does not lie and it was error to allow recovery for 'rent' accrued after the eviction.

(120 A.2d at 207). See, also, *Slayton v. Jordan*, 42 App. D.C. 421 (1914).

Accordingly, plaintiff cannot recover for lost rent to 2014 until such damages can be realistically determined since the obligation to mitigate exists throughout the period.

## CONCLUSION

For all the reasons set out herein, Harrison Career Institute respectfully requests that This Court enter an Order vacating the default judgment entered on August 8, 2006 and letting it present its defenses.

Respectfully submitted,

_____
PETER S. LEYTON, Esquire
STEVEN M. GOMBOS, Esquire
RITZERT & LEYTON, P.C.
11350 Random Hills Road, Suite 400
Fairfax, Virginia 22030
(703) 934-2660   (703) 934-9840 (fax)

_____
ARTHUR R. SHUMAN, Esquire
SCOTT and SHUMAN, LLC
38017 Fenwick Shoals Boulevard
West Fenwick, Delaware 19975
(302) 436-6200   (302) 436-7490 (fax)

Dated: August 18, 2006