### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| 16 COBALT LLC | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:06CV00175 |
| v. | ) | Judge Colleen Kollar-Kotelly |
| | ) | |
| HARRISON CAREER INSTITUTE | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT

## I.    INTRODUCTION

Plaintiff 16 Cobalt LLC ("16 Cobalt" or "Plaintiff") submits this opposition to the

Motion of Defendant Harrison Career Institute ("Harrison" or "Defendant") to set aside

the default judgment entered in this case on August 8, 2006.

The Court should deny Defendant's motion. There is no dispute that Defendant

was properly served with the summons and the complaint on January 30, 2006, and there

is no dispute that Defendant's authorized registered agent promptly provided the

summons and the complaint to Defendant's own in-house counsel. Yet Defendant made

no attempt to respond to this lawsuit for almost seven months, until after the Court

entered its default judgment. As Plaintiff demonstrates below, there is no excuse for this

conduct that would justify vacating the default judgment. Nor does Defendant have any

meritorious defense that would warrant reopening the case.

## II.    **STATEMENT OF FACTS**

On December 9, 2003, 16 Cobalt, as successor in interest to K Street Associates,

and Harrison entered into a lease agreement (the "Lease"), whereby 16 Cobalt leased to

Harrison a portion of the ninth floor and the entire tenth floor of the Building located at

1627 K Street, N.W., Washington, D.C. 20006 (the "Leased Premises") for an initial

period of ten (10) years commencing on January 2004. Under the Lease, Harrison agreed

to pay all Rent, which included monthly rental payments (increasing annually) and

Additional Rent, as that term is defined under the Lease.

Harrison defaulted under the Lease when it failed to pay the Rent for June, July,

August, September, October, November and December of 2005 and January of 2006.

Realizing that Defendant had no intention of satisfying its obligations under the Lease,

Plaintiff terminated the Lease and obtained a judgment for possession and a writ of eviction against Harrison.

To avoid the hassle and expense of formal eviction, on January 6, 2006,[1] the parties executed an Agreement for Unconditional Surrender of Premises (the "Surrender Agreement"), whereby Harrison agreed to vacate the Leased Premises. While the Surrender Agreement allowed Harrison to vacate and surrender the Leased Premises on January 10, 2006, no portion of the Surrender Agreement acted to relieve Harrison of any liability it had under the Lease. On the contrary, the Surrender Agreement made it clear that Harrison understood that "its unconditional surrender of the Leased Premises does not absolve it from liability for all past and future rent due under the Lease." Surrender Agreement ¶ 4. As a result, Harrison  remained liable for "the entire balance of the Rent for the remainder of the Term to be due and payable," less any amount received by 16 Cobalt after re-letting the Leased Premises. Surrender Agreement ¶ 5. The Surrender Agreement also contained an integration clause, stating that the Surrender "Agreement constitutes the entire agreement between the parties and supercedes all prior agreement,

---

[1]  Due to a clerical error, the Unconditional Surrender Agreement that was actually executed on January 6, 2006 was dated January 6, 2005.

negotiations, considerations and representation between the parties." Surrender

Agreement ¶ 6. The Agreement further stated that "[n]o representations, understandings,

or agreements have been made or relied upon in making this Agreement other than those

specifically set forth herein." Surrender Agreement ¶ 6.

On January 30, 2006, Plaintiff filed a complaint against Harrison to recover

damages suffered as a result of Defendant's breach of the Lease. It is undisputed that

Plaintiff properly served the complaint on Harrison's registered agent in the District of

Columbia, on February 2, 2006, as was required. The return of service completed by

Daniel Portnoy is a part of the record in this case.

On February 28, 2006, Plaintiff filed a Request for Entry of Default, which this

Court granted on March 10, 2006. On March 28, 2006, Plaintiff filed a Motion for

Default Judgment requesting that the Court award Plaintiff damages for Defendant's

breach. In response to a request from the Court for additional information, Plaintiff filed

a Supplement to the Motion for Default Judgment outlining with precision both

Plaintiff's claim for damages and the adjustments for mitigation. Satisfied with the

evidence presented, on August 8, 2006, this Court entered a default judgment against

Harrison in the amount of $1,972,247.62.

Plaintiff served each such pleading by first-class mail postage-prepaid on

Defendant's registered agent for the District of Columbia.  While it is clear that

Defendant was properly served, it was not until Plaintiff sought to collect on this

judgment that Defendant decided to respond at all.  It is astonishing that Defendant

continues to claim that despite the fact that its registered agent was served with the

complaint on February 2, 2006, it did not become aware of this litigation until after the

entry of the default judgment, a full six months after the complaint was served.

Significantly, however, in her affidavit in support of Defendant's motion, Marie Nasuti

("Ms. Nasuti"), Harrison's in-house counsel, admits that Defendant's registered agent

mailed the summons and complaint to her office.  Affidavit of Marie V. Nasuti ("Nasuti

Aff.") ¶ 7.[2]  She attempts to excuse her failure to respond to the case by claiming that she

was busy with another case that took her out of the office in January and February 2006.

---

[2]  Ms. Nasuit suggests, but does not assert, that the registered agent mailed the summons and complaint to an old address.  Nasuti Aff. ¶ 9.  But even if that were the case, it would obviously have been Harrison's responsibility to notify its registered agent of any change of address.

Id. at ¶ 6.  She does not explain, however, why she took no action to respond to the

lawsuit during the next six months that the case remanded open.

## III.    ARGUMENT

### A.  HARRISON CANNOT MEET THE REQUIREMENTS FOR SETTING ASIDE THE DEFAULT JUDGMENT

Under Rule 60(b)(1) of the Federal Rules of Civil Procedure, the court, in its

discretion, may set aside a judgment if the court finds "mistake, inadvertence, surprise, or

excusable neglect."  The standard for setting aside a default judgment is much more

rigorous than the standard used to set aside an entry of default.  *Int'l Painters and Allied*

*Trades Union and Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22,

26 (D.D.C. 2003) (denying motion to vacate default judgment).  This is in large part

because of the finality involved in default judgment cases.  While courts consider the

same factors, they must apply the more rigorous standard when the case involves

vacating or setting aside a default judgment.  In either case, the court must consider the

following factors:  "(1) that the non-defaulting party will not be substantially prejudiced

by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the

default was not the result of inexcusable or gross negligence or willful act."  *Reid v.*

*Liberty Consumer Disc. Co. of Pennsylvania*, 484 F. Supp. 435, 438 (E.D. Pa. 1980)

(refusing to set aside default judgment because defendant failed to present a meritorious

defense.); *see also Whittaker v. District of Columbia*, 228 F.R.D. 378, 380 (D.D.C. 2005)

(denying motion to vacate default judgment because the default was willful and

defendant lacked a meritorious defense).

Defendant cannot satisfy that burden required to set aside a default judgment

merely by relying on the general policy favoring the resolution of a case on the merits.

Most of the cases upon which Defendant relies involve instances where either a default

was imposed, instead of a default judgment, or where a default judgment was imposed as

a sanction for abusive or dilatory litigation tactic.[3] *Keegel v. Key West & Caribbean*

*Trading Co.*, 200 U.S. App. D.C. 319, 627 F.2d 372, 372-74 (1980) (involving default

under Fed. R. Civ. P. 55(c) not default judgment); *Capital Yacht Club v. Aviva*, 228

---

[3]    Three cases involved default judgments under Rule 60, but these cases are easily distinguishable. Indeed, in one of the three cases the court in fact denied the motion to vacate the default judgment. *Moldwood Corp. v. A.B. Stutts*, 410 F.2d 351 (5th Cir. 1969) (denying the motion to set aside default judgment, citing defendant's failure to show meritorious defenses); *see also Jackson v. Beech*, 205 U.S. App. D.C. 84, 636 F.2d 831, 837 (1980) (holding that default judgment was not proper because this was "not a case in which a default judgment was necessary because the defendants were essentially unresponsive," instead, this was a case where "[w]ithin twenty days of the filing of the complaint, the defendants moved to stop proceedings pending arbitration, and, by the time the default judgment was entered, they had filed a motion for permission to answer out of time and an answer"); *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 139 U.S. App. D.C. 256, 432 F.2d 689, 691 (1970) (holding that the default judgment was not proper because the "adversary process [had not] been halted because of an essentially unresponsive party").

F.R.D. 389, 392-94 (D.D.C. 2005) (setting aside a default, rather than a default judgment, applying the lower burden required for setting aside a default); *see also Morrison v. Int'l Programs Consortium, Inc.*, 240 F. Supp. 2d 53, (D.D.C. 2003) (involving a default judgment imposed as a sanction for counsel's failure to appear for a hearing); *Shepherd v. American Broad. Co.*, 314 U.S. App. D.C. 137 (1995) (discussing a default judgment imposed as a sanction when an attorney altered documents and harassed witnesses).

None of these cases is analogous to the case here. Rather, the default judgment, not the default, was entered not just as a sanction, but as a procedural device to resolve a case where the Defendant failed to participate in the litigation at all. In such circumstances, Defendant must meet the standards described above. As we will now show, Defendant has failed to do so.

**A.    Defendant Has Failed To Show That Its Neglect Was Excusable**

Defendant claims that the default judgment was entered against it because of its general counsel's excusable neglect.[4] Ms. Nasuti's affidavit confirms her neglect, but

---

[4]    In contrast to the cases cited by Defendant where courts are reluctant to hold a party responsible for the missteps of its outside counsel, in this case, Harrison's own employee and managing agent failed to take

provides no adequate excuse.  She states only that she failed to respond to the numerous

filings in this case because she was occupied with another matter and unaware of the

pending litigation.  Nasuti Aff. ¶ 6-7.  Ms. Nasuti argues that Plaintiff should have served

her directly in New Jersey rather than serving Harrison's registered agent in the District

of Columbia.  Nasuti Aff. ¶ 7.  The idea that Plaintiff should have served an out –of-state

company through one of its home office employees  rather than the company's registered

agent is preposterous.  Plaintiff properly served the registered agent for Defendant in the

jurisdiction where the action was pending, the District of Columbia.  Furthermore, Ms.

Nasuti grudgingly acknowledges that the agent sent the complaint to her.  *Id.*  Her failure

to take action in these circumstances is negligence, not excusable neglect.  *Insurance Co.*

*of North America v. Morrison*, 154 F.R.D. 278, 280 (M.D. Fla. 1994) (stating that

"[d]efault that is caused by the movant's failure to establish minimum procedural

safeguards for determining that action in response to a summons and complaint is being

taken does not constitute default through excusable neglect" and holding that defendant's

conduct did not "constitute either good cause or excusable neglect").

---

steps to respond to the summons and complaint.  Thus, the neglect can only be attributed to Defendant
itself, not to an outside agent.

**B.    No Meritorious Defense Exists in this Case**

Even if Defendant could show excusable neglect, it has not made and could not

make the requisite showing that it has a meritorious defense to the complaint.  Courts

have universally required a movant to present a "meritorious defense [as] a precondition

for Rule 60(b) relief [sic], reasoning that movant must show that vacating the judgment

will not be an empty exercise or a futile gesture."  *FG Hemisphere Assocs., LLC v.*

*Democratic Republic of Congo*, 447 F.3d 835, 842 (D.C. Cir. 2006).

Defendant's motion claims two defenses, neither of which has the slightest merit:

(1) "plaintiff agreed that upon execution of the Unconditional Surrender Agreement that

Harrison would only be responsible for the rent up to that date and no more" and (2)

plaintiff failed to mitigate damages, and a claim for future damages is premature.

The first asserted defense is frivolous.  On its face, the Surrender Agreement

directly contradicts Defendant's claim that it was not responsible for the rent after the

date of the Surrender Agreement.  The Surrender Agreement states unambiguously that

"[t]enant acknowledges that its unconditional surrender of the Leased Premises does not

absolve it from liability for all past and future rent due under the Lease." Surrender

Agreement ¶ 4. In addition, the Surrender Agreement further provides that the

"Agreement does not constitute a waiver or release of any of Landlord's rights under the

Lease, at common law, or in equity, to recover all rent and other damages due to

Landlord as a result of Tenant's breach of the Lease." *Id.* Defendant cannot avoid the

clear terms of the Surrender Agreement. *Dyncorp v. Ocean Marine Navigation Co.*, 2000

U.S. Dist. LEXIS 16899, at *34 (D.D.C. Nov. 17, 2000) ("When the terms of a contract

are clear and unambiguous, the interpretation of those terms presents a question of law"

because the "[u]nambiguous contract terms are afforded their plain meaning without

resort to extrinsic evidence."); *see also District-Realty Title Insurance Corp. v. Ensmann*,

247 U.S. App. D.C. 228, 767 F.2d 1018, 1022 (1985).

Further, the Surrender Agreement precludes Defendant's argument that it relied

on alleged oral discussions and understandings. As described earlier, the Agreement

contains an integration clause that provides, "[t]his Agreement constitutes the entire

agreement between the parties and supersedes all prior agreement, negotiations,

considerations and representations between the parties." Surrender Agreement ¶ 6. The

Surrender Agreement further states that "[n]o representations, understandings, or agreements have been made or relied upon in making this Agreement other than those specifically set forth herein." *Id.* Defendant cannot seriously claim that the Surrender Agreement acted to extinguish the plaintiff's rights when the plain language of the Agreement contradicts that position. *Johnson v. Reno*, 1996 U.S. Dist. LEXIS 5347, at *21-*25 (D.D.C. April 17, 1996) (stating "[a] presumption exists that a written contract contains all of the parties' terms, and the presence of an integration clause strengthens that presumption" and that "[i]n the face of a fully integrated agreement the parole evidence rule generally precludes the consideration of extrinsic evidence").

Harrison's other proposed defense -- that plaintiff failed to properly mitigate its damages -- is similarly unavailing. While the Surrender Agreement states that " if [Plaintiff] leases any or all of the Leased Premises," it will deduct any rent it receives from the amount owed by Defendant, it does not impose on Plaintiff any duty to mitigate. Even without such a duty, Plaintiff actively attempted to mitigate its damages and succeeded in doing so by re-letting portions of the Leased Premises. In fact, the Supplement filed by Plaintiff takes into consideration the amounts received from various

12

tenants who presently occupy or who formerly occupied the Leased Premises. The

Supplement provided that the Court subtract the following from the amount owed by

Defendant: (i) the $26,026.88 security deposit Harrison paid when it executed the Lease;

(ii) the $759,986 in rental payments due from Wilshire DC Partners for a portion of the

10th Floor based on a term of 6 years ending in 2012 (Total Rental Payments for: Year 1

= $118,976, Year 2 = $121,950, Year 3 = $124,999, Year 4 = $128,124, Year 5 =

$131,327, Year 6 = $134,610); (iii) the $67,450.00 in rental payments from Al Jazeera

International, (USA) Inc. for a portion of the 10th Floor based on a term of 4 months

ending in July 2006 ($16,862.50 per month); and (iv) the $976,223 in rental payments

due from Future Media Concepts, Inc. for a portion of the 9th Floor based on a term of 10

years ending in 2016 (amount of rental payment only calculated for term ending in 2014

because Harrison's term expires in 2014 - Total Rental Payments for: Year 1 = $111,746,

Year 2 = $114,539, Year 3 = $117, 403, Year 4 = $120,338, Year 5 = $123,346, Year 6 =

$126,430, Year 7 = $129, 591, Year 8 = $132,830). The Court in fact subtracted these

amounts from the total rent due from Defendant and entered a default judgment only for

the net amount due. Thus, Defendant's "mitigation" defense has already been taken into account.

Finally, Defendant claims that it is entitled to delay the ultimate resolution of this matter until 2014 because any claim by Plaintiff is premature based on Plaintiff's duty to mitigate for the full term of the Lease. Again, Defendant's position is absurd. Quite simply the Lease and the Surrender Agreement both provide that Plaintiff is entitled to immediately collect damages in the event that Defendant defaults under the Lease. Lease ¶ 2.6.2 and Surrender Agreement ¶ 4.

Defendant's reliance on *McIntosh v. Gitomer*, 120 A.2d 205 (D.C. 1955) to support its defense that Plaintiff's claim for damages is premature is misplaced. The decision in *McIntosh* turned on a specific covenant of the lease, which provided that the "tenant would be liable for any and all deficiency or loss of rent, and authorized the landlord to re-let the premises at the tenant's risk." This covenant did not allow the landlord to collect damages. Thus, the court found that rent could be identified only at the conclusion of the lease term. This principle does not apply to damages, which may be calculated at the moment the initial harm is suffered.

The Lease and Surrender Agreement between 16 Cobalt and Harrison clearly

provide for the recovery of damages, rather than only the recovery of future deficiencies

in rent.  Lease ¶ 1.6.2 and Surrender Agreement ¶ 4.  Defendant cannot avoid the

imposition of damages for eight more years by citing the irrelevant decision in *McIntosh*.

### C.    Plaintiff Would Be Prejudiced if the Judgment Were Vacated

Plaintiff would be prejudiced if the default judgment were set aside.  Plaintiff

filed this case eight months ago and has expended significant time and resources to bring

it to a conclusion.  A decision to vacate or set aside the default judgment would place

Plaintiff squarely at the beginning of the process without taking into account the efforts

already expended.[5]

## IV.    CONCLUSION

Defendant fails to show excusable neglect or a single meritorious defense to

justify setting aside the default judgment.  The conduct by Harrison's in-house counsel

---

[5]  For this reason, if, despite the foregoing, the court were inclined to set aside the default judgment, the court should exercise its power und Rule 60(b) to set such conditions that are just, which in this case would include a requirement that Harrison pay the attorney's fees and costs that Plaintiff incurred pursuing the default judgment.  In addition, the court should require Harrison to post a bond in the amount of the potential judgment in this action, as already set by the court at $1,972,247.62.

400449682v1

amounts to negligence, rather than excusable neglect, and should not be excused by

this Court. Further, Defendant's asserted defenses are contradicted by the

unambiguous terms of the Surrender Agreement and the Lease.

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's

motion to set aside the default judgment in this case.

Dated:  September 1, 2006            Respectfully submitted,

                                     _____/s/_____
                                     David J. Cynamon (D.C. Bar # 182477)
                                     Tonya G. Gaskins-Saunders (D.C. Bar # 484414)
                                     PILLSBURY WINTHROP SHAW
                                     PITTMAN LLP
                                     2300 N Street, N.W.
                                     Washington, D.C. 20037
                                     (202) 663-8000

                                     *Attorneys for Plaintiff*
                                     16 Cobalt LLC