UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

16 COBALT LLC,

    Plaintiff,

    v.

HARRISON CAREER INSTITUTE,

    Defendant.

Civil Action No. 06–175 (CKK)

**MEMORANDUM OPINION**
(March 28, 2007)

On August 8, 2006, the Court entered an Order and Default Judgment in favor of Plaintiff, 16 Cobalt LLC, against Defendant, Harrison Career Institute, in the amount of $1,972,247.62.  Presently before the Court are Defendant Harrison Career Institute's [12] Motion to Set Aside Default Judgment (hereinafter, "Motion to Set Aside Default Judgment"), and in relation thereto, [11] Defendant's Motion to Deem Prior Motion to Set Aside Judgment as Filed Nunc Pro Tunc, both filed on August 21, 2006.  Plaintiff filed an opposition in response to Defendant's Motion to Set Aside Default Judgment, but no reply was filed.  After considering the aforementioned filings, the history of and filings in the case, and the relevant statutes and case law, the Court shall deny [11] Defendant's Motion to Deem Prior Motion to Set Aside Judgment as Filed Nunc Pro Tunc, and deny in part and hold in abeyance in part Defendant's [12] Motion to Set Aside Default Judgment.

## I.  BACKGROUND

On December 9, 2003, K Associates, the predecessor in interest to Plaintiff, entered into a ten-year commercial property lease with Defendant to commence in January of 2004 for a portion

of the ninth floor and the entire tenth floor of the Building (the "Leased Premises") at 1627 K

Street, NW, Washington, D.C.  Pl.'s  Mot. for Default J. ¶ 3 & Ex. B (Lease); Def.'s Mot. to Set

Aside Default J. ¶¶ 1, 2.  According to Plaintiff (and not refuted by Defendant), Defendant ceased

paying the monthly rent in June of 2005.  Pl.'s Mot. for Default J. ¶ 5.  In July of 2005,

Defendant allegedly told Plaintiff that it wished to terminate the lease agreement.  Def.'s Mot. to

Set Aside Default J. ¶ 5.  On January 6, 2006, Defendant signed an Agreement for Unconditional

Surrender of Premises ("Surrender Agreement"), signed by Marie V. Nasuti, General Counsel for

Defendant.  Pl.'s Mot. for Default J., Ex. A (Surrender Agreement).  On January 10, 2006,

pursuant to the Surrender Agreement, Defendant vacated the Leased Premises, but "has not paid

any of the Rent due and owing."  Pl.'s Compl. ¶ 16.

On January 31, 2006, Plaintiff filed a Complaint for Damages against Defendant, citing

breach of contract and requesting damages "not less than $ 3 million, plus attorneys' fees, costs,

pre- and post-judgment interest, and such other and further relief this Court deems appropriate."

Pl.'s Compl. at ¶ 19.  Plaintiff sent a copy of the Summons to Defendant's registered agent

(National Registered Agents, Inc.) in Washington, D.C.  *Dkt. entry* [2] (Summons and Return of

Service dated February 2, 2006).  *See* Pl.'s Opp'n to Def.'s Mot. to Set Aside Default J. at 1, 4, 9;

Def.'s Mot to Set Aside Default J. ¶ 8.  Defendant does not deny receiving Plaintiff's Complaint.

Pl.'s Opp'n to Def.'s Mot. to Set Aside Default J. at 9; Def.'s Mot. to Set Aside Default J., Ex. B

¶ 7 (Affidavit of Marie V. Nasuti) ("I have learned that National Registered Agents, Inc. had

apparently received and mailed to my office in Voorhees, NJ a complaint which had been served

on it by the plaintiff's attorney.").  Defendant did not answer or otherwise respond to Plaintiff's

Complaint.  On March 1, 2006, Defendant allegedly discontinued the services of its registered

service agent in Washington, D.C., "because defendant was no longer doing business in the

District of Columbia and no longer intended to do so." Def.'s Mot. to Set Aside Default J. ¶ 10.

On March 9, 2006, Plaintiff filed a Request to Enter Default against Defendant pursuant

to Rule 55(a) of the Federal Rules of Civil Procedure. *See dkt. entry* [3]. On March 10, 2006,

the Clerk's Office for the United States District Court for the District of Columbia entered

default against the Defendant. *See dkt entry* [5]. On March 28, 2006, Plaintiff filed its First

Motion for Default Judgment against Defendant, requesting the entry of a default judgment in the

amount of $3,381,801.22. Pl.'s Mot. for Default J. at 1. Plaintiff served this motion on March

28, 2006 on National Registered Agents, Inc. in Washington, D.C. (Defendant's former

registered service agent), but it is unclear from the record whether Defendant received a copy of

this Motion.[1] Responding to a request from the instant Court to provide supplemental details

about the damages claim, on July 21, 2006, Plaintiff filed a Supplement to its Motion for Default

Judgment. *See dkt. entry* [8]. This Supplement itemized Plaintiff's revised damages claim in the

amount of $1,972,247.62. *Id.* at 1. On August 8, 2006, the instant Court issued an Order and

Final Judgment for Plaintiff in the amount of $1,972,247.62. [9] Order and Final J. ¶ 1.

On August 21, 2006, Defendant filed the two motions now pending: [11] Defendant's

Motion to Deem Prior Motion to Set Aside Judgment as Filed Nunc Pro Tunc; and Defendant's

[12] Motion to Set Aside Default Judgment. On September 1, 2006, Plaintiff filed an

---

[1] The Federal Rules of Civil Procedure do not require the moving party to serve written notice of a motion for default judgment on the non-moving party unless the non-moving party has appeared in the action. "If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." Fed. R. Civ. P. 55(b)(2).

Opposition.  No reply from Defendant has been filed to date.

## II.  LEGAL STANDARDS & DISCUSSION

A.      *Defendant's Motion to Deem Prior Motion to Set Aside Judgment as Filed Nunc Pro Tunc*

In Defendant's Motion to Deem Prior Motion to Set Aside Judgment as Filed Nunc Pro Tunc, Defendant "seeks leave of this Court to file its Motion to Set Aside Default Judgment via the CM/ECF electronic filing system ("CM/ECF") on this date as if filed on Friday, August 18, 2006 . . . ."  Def.'s Mot. to Deem as filed Nunc Pro Tunc at 1.  According to Defendant, said motion was delivered in paper form to the Clerk's Office on Friday, August 18, 2006, but said motion was not filed on ECF until Monday, August 21, 2006, because "Attorney John E. Ritzert, Jr., a member in good standing of the District of Columbia Bar, was out of the office on Friday, August 18, 2006 and therefore unavailable to file the motion electronically using his CM/ECF log-on and password[.]"  *Id.*  Mr. Ritzert's "contemporaneous" notice of appearance was dated August 18, 2006, but also filed electronically August 21, 2006.  *Id.* at 2, 3.  Defendant cites to Local Civil Rule 5.4(g)(1) as the legal basis for this motion, see *id.* at 2, which states: "The Clerk may direct an attorney or pro se party to re-file a document that has been incorrectly filed, or to correct an erroneous or inaccurate docket entry."  LCvR 5.4(g)(1).

The Court does not find that Local Civil Rule 5.4(g)(1) was intended to allow a document to be deemed "filed" on the day when a non-member of this Court submitted said filing to the Clerk's office in paper form because member counsel was unavailable.  Defendant has proffered no case law to the contrary.  This Court uses an electronic filing system, CM/ECF, as set forth in Local Civil Rule 5.4(a).  LCvR 5.4(a).  Only members in good standing of the Bar of the United

States District Court for the District of Columbia may appear as "sole or lead counsel" in a matter before the Court. LCvR 83.2(a)–(b). A non-member attorney may not file papers on behalf of his client until he has been admitted by this Court *pro hac vice* and joined with a member in good standing of the Bar and such papers co-signed by said member counsel. LCvR 83.2(c)(1). Defendant's non-member attorney of record, Mr. Arthur R. Shuman, Esq., did not file a Motion for Leave to Appear Pro Hac Vice [17] until August 22, 2006–after he attempted to file paper documents with the Clerk on August 18, 2006. Mr. Ritzert, a member of the Bar of this Court, did not file a notice of appearance on the electronic record until August 21, 2006.

Attorneys are "presumed to know and understand the rules of this Court." *Internet Fin. Servs. v. Law Firm of Lawson-Jackson*, 394 F. Supp. 2d 1, 6 (D.D.C. 2005). *See also Webster v. Pacesetter*, 270 F. Supp. 2d 9, 11 (D.D.C. 2003) ("[I]gnorance of the rules [] or mistakes construing the rules do not usually constitute 'excusable' neglect.") (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 392, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)). Defendant's reliance on Rule 5.4(g)(1) is misplaced. Local Civil Rule 5.4(g)(1) states that the "Clerk may direct an attorney or pro se party to re-file a document that has been incorrectly filed, or to correct an erroneous or inaccurate docket entry." LCvR 5.4(g)(1). Defendant does not allege to have improperly filed its Motion to Set Aside Default Judgment on August 18, 2006; rather, it alleges that it was unable to file said document at all on that date. While Local Civil Rule 5.4(g)(2), which is not invoked by Defendant, allows a document to be "deemed filed on the date is was first presented for filing if electronically filed . . . no later than the next business day" for instances in which the "attorney or pro se party *who has been given leave to file electronically*

5

presents a document for filing in paper form . . . ." LCvR 5.4(g)(2) (emphasis added), it is clear

that Mr. Shuman had not "been given leave to file electronically" in this case.

       Accordingly, the Court shall deny Defendant's Motion to Deem Prior Motion to Set

Aside Judgment as Filed Nunc Pro Tunc, and the filing date of August 21, 2006 remains the

proper date of filing with respect to Defendant's Motion to Set Aside Judgment.

       However, it is unclear to the Court why this would have any effect on Defendant's rights

based on Defendant's proposed date of filing and the actual date of filing of Defendant's Motion

to Set Aside Default Judgment.  Pursuant to Federal Rule of Appellate Procedure 4(a)(4), a

motion to set aside default judgment tolls the time in which a Court's judgment must be appealed

if filed within ten days of the Court's judgment.  Fed. R. App. P. 4(a)(4)(vi).  *See also Consarc*

*Corp. v. Iraqi Ministry,* 27 F.3d 695, 700 n.4 (D.C. Cir. 1994).  However, this ten-day deadline is

ten business days, not ten calendar days.  Federal Rule of Civil Procedure 6(a) provides that any

federal filing deadline less than eleven days must be calculated such that "intermediate

Saturdays, Sundays, and legal holidays . . . be excluded in the computation."  Fed. R. Civ. P.

6(a).  The United States Court of Appeals for the District of Columbia in *Toolasprashad v.*

*Bureau of Prisons* explicitly acknowledged that Federal Rule of Civil Procedure 6 applies to a

consideration of whether a motion for relief from judgment was timely filed so as to toll the

filing of an appeal as set forth in Federal Rule of Appellate Procedure 4(a)(4).  See

*Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 582 (D.C. Cir. 2002) ("The only procedural

question, then, is whether Toolasprashad also timely appealed the district court's underlying

dismissal.  Two procedural rules govern this issue:  FRAP 4, which provides that 'the time to file

an appeal runs . . . from the entry of the order disposing' of a motion for relief from judgment

under Federal Rule of Civil Procedure ('FRCP') 60 '*if the motion is filed no later than [ten] days ... after the judgment is entered,*' Fed. R. App. P. 4(a)(4)(A)(vi) (emphasis added); and FRCP 6, which provides that the district court 'may not extend the time' for filing a FRCP 60 motion, Fed. R. Civ. P. 6(b).").

The instant Court granted Plaintiff's Motion for Default Judgment on August 8, 2006. Defendant attempted to file its Motion to Set Aside Default Judgment on Friday, August 18, 2006, but said motion was not actually filed until Monday, August 21, 2006. August 22, 2006 is ten business days after August 8, 2006. Therefore, Defendant's Motion to Set Aside Default Judgment, filed on August 21, 2006, was filed within 10 business days of the Court's August 8, 2006 Order and Judgment, such that the thirty-day deadline for filing an appeal has been suspended pending the Court's ruling on Defendant's Motion to Set Aside Default Judgment.

      B.     *Defendant's Motion to Set Aside Default Judgment*

      1.     <u>Rule 60(b) Standard of Review</u>

Defendant's Motion to Set Aside Default Judgment does not specify the Federal Rule of Civil Procedure under which it is filed. However, pursuant to Federal Rule of Civil Procedure 55, "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). Defendant's Motion to Set Aside Default Judgment can only be construed as filed pursuant to Federal Rule of Civil Procedure 60(b). "A default can be set aside under rule 55(c) for 'good cause shown,' but a default that has become final as a judgment can be set aside *only* under the stricter rule 60(b) standards for setting aside final, appealable orders." *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980) (emphasis added). *See also Capital Yacht Club v.*

*Vessel Aviva*, 228 F.R.D. 389, 392-93 (D.D.C. 2005) ("[U]nlike some courts which apply the same standard to vacatur of default and vacatur of default judgment, *see, e.g., Chrysler Credit Corp. v. Macino,* 710 F.2d 363, 367 (7th Cir. 1983) (holding that 'the standard to set aside an entry of default under Rule 55(c) is essentially the same as the standard for vacating a default judgment under Rule 60(b)'), in this circuit courts grant vacatur of default more freely than vacatur of default judgment, *Jackson v. Beech,* 636 F.2d 831, 835 (D.C. Cir.1980) (holding that a 'default can be set aside under rule 55(c) for "good cause shown," but a default that has become final as a judgment can be set aside only under the stricter rule 60(b) standards for setting aside final, appealable orders').").

Federal Rule of Civil Procedure 60, titled "Relief from Judgment or Order," contains the following provision:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.  On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).  Rule 60(b) authorizes a court to relieve a party from final judgment for, *inter alia*, "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  This Circuit has adopted the Supreme Court's analysis for Rule 60(b)(1) motions based on "excusable neglect."  *See Pioneer*, 507 U.S. at 395, 113 S. Ct. 1489; *FG Hemisphere Assoc., LLC v.*

8

*Democratic Rep. of Congo*, 447 F.3d 835, 838 (D.C. Cir. 2006) (applying the *Pioneer* test to the defendant's claim of excusable neglect with respect to the default judgment against it); *In re: Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (concluding the flexible *Pioneer* analysis for Rule 60(b)(1) motions was preferred over a "*per se* rule that garden variety attorney inattention can never constitute excusable neglect").  Relevant circumstances for the Court to consider include: "the danger of prejudice to the plaintiff, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395, 113 S. Ct. 1489.  In order to obtain relief from default judgment under Rule 60(b), the moving party must also present a "meritorious defense." *FG Hemisphere*, 447 F.3d at 842 (citing *Murray v. District of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995) ("It has long been established that as a precondition to relief under Rule 60(b), the movant must provide the district court with reason to believe that vacating the judgment will not be an empty exercise or a futile gesture.").  "Relief under Rule 60(b)(1) motions is rare; such motions allow district courts to correct only limited types of substantive errors." *Hall v. Cent. Intelligence Agency*, 437 F.3d 94, 99 (D.C. Cir. 2006).

Whether a party should be granted relief under Rule 60(b) is a matter left to the district court's discretion: "[T]he district judge, who is in the best position to discern and assess all the facts, is vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion, and the district court's grant or denial of relief under Rule 60(b), unless rooted in an error of law, may be reversed only for abuse of discretion." *Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996) (quoting *Twelve John Does*

*v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988)).  Importantly for purposes of

addressing the issues raised in this case, the particular "question of whether attorney error may

constitute 'excusable neglect' is within the discretion of the district court . . . ."  *In re: Vitamins*,

327 F.3d at 1210.

### 2.    Defendant has not demonstrated "Excusable Neglect"

The Court notes at the outset that the legal authorities offered by Defendant to support its

claim of "excusable neglect" are problematic in that they address motions to reverse the entry of

default rather than motions to reverse a default judgment.[2]  *See, e.g., Capital Yacht Club*, 228

F.R.D. at 396 (conditionally vacating the entry of default against defendant); *Keegel v. Key West*

*& Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980) (overturning lower court's denial

of Rule 55(c) motion to set aside entry of default).  In this Circuit, "default can be set aside under

rule 55(c) for 'good cause shown,' but a default that has become final as a judgment can be set

aside only under the stricter rule 60(b) standards for setting aside final, appealable orders."

*Jackson*, 636 F.2d at 835.

#### a.    *Defendant's reason for delay is not persuasive and was in the reasonable control of the movant*

Defendant offers as evidence of excusable neglect the fact that Marie V. Nasuti, General

Counsel for HCI, was otherwise occupied with unrelated litigation duties at the time Plaintiff

filed its complaint against HCI.[3]  Def.'s Mot. to Set Aside Default J., Ex. B (Aff. of Marie V.

---

[2]  Other cases cited by Defendant are easily distinguishable because they deal with motions to vacate default judgments that had been imposed as sanctions rather than out of the absence of a response.  *See Morrison v. Int'l Programs Consortium, Inc.*, 240 F. Supp. 2d 53, 60 (D.C. Cir. 2003); *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469 (D.C. Cir. 1995).

[3]  Ms. Nasuti states in her affidavit: "[F]rom approximately September 2005 until the present in my role as corporate counsel, I have been engaged in litigation on a matter involving

Nasuti) ¶¶ 6–7.  However, Ms. Nasuti does not deny that her office received a copy of the

Complaint from HCI's then-active registered agent, National Registered Agents, *id.* ¶ 7, but

rather implies that she overlooked the Complaint because of her workload.

      While this Circuit has refused to adopt a "*per se* rule that garden variety attorney

inattention can never constitute excusable neglect," *In re: Vitamins*, 327 F.3d at 1209, there is no

question that the Defendant was reasonably able to timely respond to Plaintiff's Complaint and

appear in the litigation at some point prior to August 21, 2006, when Plaintiff's Complaint was

served on Defendant in February of 2006.  Defendant's counsel's affidavit offers very little

explanation for neglect, only emphasizing her preoccupation with other litigation matters.  The

Court is hard-pressed to believe that Ms. Nasuti was so uniquely situated in her degree of "busy-

ness" that she could not address a pleading for over six months.  Furthermore, Defendant's

counsel offers no explanation as to her failure to request a continuance in these proceedings or an

extension of time to respond to the Complaint.  *See Lepkowski v U.S. Dep't of Treasury*, 804

F.2d 1310, 1313 (D.C. Cir. 1986) (acknowledging that "fail[ure] to exert the minimal effort

which would have cured [counsel's] omission" did not comport with excusable neglect).

      Defendant urges this Court to consider opinions reflecting a reluctance to impute the

negligence of outside legal representatives onto their clients.  *See Morrison*, 240 F. Supp. 2d at

56 ("[T]he client[s'] only fault is [their] poor choice of counsel . . . [D]efault judgment is a

---

hearings in Philadelphia PA and Washington DC.  These hearings alone ran from October 2005
until mid-February 2006, and naturally involved pre- and post-trial . [sic].  This required my
involvement in marshalling [sic] and interviewing witnesses, reviewing and coordinating
evidence and documents, preparing factual and legal memoranda, [and] assistance in
investigation.  I was physically out of the office for most of the month of January and February
2006 when the trial was held in Washington DC.  Following the trial, there was an extensive
post-trial briefing process which continued to require an extraordinary expenditure of time."
Def.'s Mot. to Set Aside Default J., Ex. B, ¶ 6.

disproportionate sanction and an attempt should first be made to sanction the attorney." (internal quotation omitted)). *See also Jackson*, 636 F.2d at 837. However, the instant case is distinguishable from *Morrison* and *Jackson* in that the attorney exhibiting alleged "excusable neglect" in this case is Defendant's *inside* General Counsel, not an outside attorney. Moreover, Defendant presumes that this Court is compelled to absolve a party of its attorney's negligent or neglectful behavior–it is not. The United States Supreme Court has ruled that, "in determining whether [a party's action] was excusable, the proper focus is upon whether the neglect of [the party] *and their counsel* was excusable." *Pioneer*, 507 U.S. at 397, 113 S. Ct. 1489. In this case, Defendant's reason for delay was within the reasonable control of the movant, as Defendant's own in-house counsel simply neglected to address the Complaint at issue for over six months while addressing other matters. The Court takes note of Defendant's continuing lack of responsiveness, timely or otherwise, in the instant matter by virtue of its failure to file any Reply to Plaintiff's Opposition to the pending motion to set aside default judgment, filed on September 1, 2006, which raised a host of substantive issues.

### b.    *Defendant's actions do not evince "good faith"*

Evidence of good faith can be found in affirmative—yet mistaken—attempts to adhere to the rules of the court. *See Yesudian v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) (finding that the defendant's reliance on the wrong set of rules was "foolish," but did not suggest bad faith in filing its opposition a week late). Conversely, unsubstantiated and disingenuous excuses can demonstrate bad faith. *See Gov't Relations Inc. v. Howe*, Civ. No. 05-1081 (CKK), 2007 WL 201264 at *2–5 (D.D.C. Jan. 24, 2007) (denying plaintiff's motion to amend complaint nunc pro tunc when no substantiated reasons were offered to excuse late filing). In *Howe*, the

plaintiff's motion for reconsideration included counsel's unsubstantiated excuses, such as not receiving electronic notification of a Court order, which were easily refuted by the record. *Id.* at *2. Defendant's excuses for not responding to Plaintiff's Complaint in this case are similarly unsubstantiated.

Defendant's counsel asserts that she was involved in out-of-town litigation from October 2005 until mid-February 2006, Aff. of Marie Nasuti, ¶ 6, yet Defendant's Answer was not due until February 22, 2006. It was also within Defendant's power to file for an enlargement of time for filing an answer, particularly given that Defendant's counsel states that she was engaged in litigation *in Washington, D.C.* during that time, see *id.*, but Defendant neglected to do so. *See* Fed. R. Civ. P. 6(b).

Defendant's counsel's claim that she would have expected to receive some method of "contact, mailing, or service of [Plaintiff's] complaint . . . by the plaintiff or its attorney . . . other than the service on the National Registered Agents in Washington" on January 31, 2006 suggests a reluctance to acknowledge that Plaintiff properly served Defendant. Aff. of Marie Nasuti, ¶ 7. This assertion similarly suggests that the absence of "reinforcement" notice by way of a telephone call from Plaintiff, for example, excused Defendant for not taking due notice of the Complaint mailed to Defendant by its registered agent in Washington, D.C. The Federal Rules of Civil Procedure dictate no such requirement. *See* Fed. R. Civ. P. 4(h)(1). Plaintiff denies any service errors, noting that Defendant does not "dispute that Defendant's authorized registered agent promptly provided the summons and the complaint to Defendant's own in-house counsel." Pl.'s Opp'n at 1. The Court again notes that Defendant did not file any reply contradicting this statement.

13

Finally, when Defendant discontinued the services of National Registered Agents on March 1, 2006, see Def.'s Mot. to Set Aside Default J. ¶ 10, it was still in financial arrears to Plaintiff for past due rent pursuant to the Surrender Agreement. *See* Pl.'s Opp'n at 2. Defendant's claim that it was "no longer doing business in the District of Columbia and no longer intended to do so," Def.'s Mot. to Set Aside Default J. ¶ 10, indicates a willful ignorance of its legal obligations at best. As such, the Court finds that Defendant's actions considered in their totality evidence bad faith.

> c.    *Length of the delay and its impact on judicial proceedings*

A court may consider granting a movant's Rule 60(b)(1) motion if doing so would create only a brief delay with "no suggestion [of] a material effect on the proceedings," *See Yesudian*, 270 F.3d at 971. However, in this case, over seven months passed between service of Plaintiff's Complaint on Defendant and Defendant's appearance in this action *after* the Court had issued a Judgment. After Plaintiff filed its Complaint, Plaintiff filed multiple documents with this Court in pursuit of a judgment, including a [3] Request to Enter Default, a [6] Motion for Default Judgment, and a [8] Supplement to its Motion for Default Judgment addressing damage calculations, all prior to Defendant's appearance in the case. The Court has expended considerable time and resources in determining the proper judgment amount and addressing filings, including Defendant's instant Motion to Set Aside Default Judgment, which would not have been necessary in the first place had Defendant properly appeared in the case at some point between being served with the Complaint and the Court's issuance of its Judgment over seven months later.

> d.    *Prejudice to Plaintiff*

14

Finally, prejudice to the Plaintiff, while not necessary to deny Defendant's Motion to Set Aside Default Judgment, is worth noting. *Whittaker v. District of Columbia*, 228 F.R.D. 278, 380 (D.D.C. 2005) ("[A]n absence of prejudice to plaintiff does not in itself entitle defendant to relief from the judgment[.]" (internal quotation omitted)). "Prejudice under Rule 60(b)(1) appears typically and properly to contemplate costs that reconsideration of the final judgment would inflict on the non-moving party *independent of the chance of reversal. . . .* Reliance interests control." *FG Hemisphere Associates*, 447 F.3d at 840.

To date, Plaintiff has not received any post-Surrender Agreement payments from Defendant–including the eight months of past-due rent owed to Plaintiff. Pl.'s Compl. ¶¶ 15, 18. Furthermore, while the timing is not entirely clear, Plaintiff may have entered into binding lease arrangements after the filing of its Complaint without the benefit of Defendant's position (which is still unclear) as to what would allegedly constitute sufficient lease amounts to mitigate the damages owed by Defendant to Plaintiff if such a duty to mitigate exists (as discussed later in this Opinion). *See* Plaintiff's [8] Supplement to its Motion for Default Judgment at 2-3.

The Court finds, in light of its examination of the *Pioneer* factors above, that Defendant's conduct does not constitute "excusable neglect."

### 3.     Defendant's "meritorious defense" arguments

The requirement of demonstrating  a "meritorious defense" as such is applicable only to a motion to vacate default judgment rather than simply a motion to vacate entry of default. The Court reads the instant Circuit's decision in *FG Hemisphere* to indicate that without the presence of a meritorious defense, a finding of excusable neglect alone is not sufficient to warrant a reversal of default judgment under Rule 60(b):

Finally, our cases (and those of other circuits) antedating *Pioneer* generally required a party seeking relief on grounds of excusable neglect to assert a potentially meritorious defense. Since then other circuits have held, without much explanation, that the requirement survives *Pioneer,* even though that decision mentions no such criterion. Of course *Pioneer*'s list of factors was non-exclusive. And the requirement advances judicial economy: if the 60(b)(1) movant's substantive claim is plainly meritless, there seems little point in a nuanced treatment of data bearing on the excusability of the movant's neglect. Indeed, in a post- *Pioneer* case, we held that a potentially meritorious defense is a precondition for Rule 60(b) relief (without discussion of *Pioneer*), reasoning that the movant must show "that vacating the judgment will not be an empty exercise or a futile gesture." *Murray v. District of Columbia,* 52 F.3d 353, 355-56 (D.C. Cir. 1995).

*FG Hemisphere*, 447 F.3d at 842.

Defendant presents two "meritorious defenses," presumably offered in the alternative: 1) that the Surrender Agreement between HCI and 16 Cobalt LLC absolved Defendant of any rent payment after the date of signing (January 10, 2006), Def.'s Mem. to Set Aside Default J. at 5; and 2) that not only does Plaintiff have a duty to mitigate any claims for future payments from Defendant, *id.*, but any demand for present payment of such monies from Defendant at this juncture would be "premature." *Id.* at 6. These assertions will be addressed in turn.

    a.    *Defendant was not absolved from future debts upon signing the Surrender Agreement*

Defendant does not prevail on its first "meritorious defense" because the terms of the Surrender Agreement expressly refute Defendant's claim of absolution from future rent payments beyond January 10, 2006. The instant Circuit instructs interpreting "unambiguous contractual provisions" without considering "extrinsic evidence, . . . [finding] the intention of the parties in the language used to express their agreement." *E. P. Hinkel & Co., Inc. v. Manhattan Co.*, 506 F.2d 201, 204 (D.C. Cir. 1974). The Surrender Agreement states:

Tenant acknowledges that its unconditional surrender of the Leased Premises does not absolve it from liability for all past and future rent due under the Lease. Tenant acknowledges that this Agreement does not constitute a waiver or release

16

of any of Landlord's rights under the Lease, at common law, or in equity, to recover all rent and other damages due to Landlord as a result of Tenant's breach of the lease.

Pl.'s Mot. for Default J., Ex. A, ¶ 4.  The Court finds that this provision of the Surrender Agreement is unambiguous because it is not "'reasonably susceptible of different constructions or interpretations.'"  *Lee v. Flintkote Co.*, 593 F.2d 1275, 1282 (D.C. Cir. 1979) (quoting *1901 Wyoming Ave. Co-op. Ass'n v. Lee*, 345 A.2d 456, 461 (D.C. 1975)).  Further, the terms of the Surrender Agreement state that it "constitutes the entire agreement between the parties and supercedes all prior agreement, negotiations, considerations and representations between the parties."  Pl.'s Mot. for Default J., Ex. A, ¶ 6.  *See also Johnson v. Reno*, Civ. No. 93-206 (TFH), 1996 WL 33658687 at *5 (D.D.C. Apr. 17, 1996) ("A presumption exists that a written contract contains all of the parties' terms, and the presence of an integration clause strengthens that presumption." (citing *Luther Williams, Jr., Inc. v. Johnson*, 229 A.2d 163, 165 (D.C. 1967)).  Furthermore, a number of cases have held that a defaulting lessor can be held liable via contract for future rent for the full term of the lease.  *See, e.g., Lennon v. U.S. Theatre Corp.*, 920 F.2d 996 (D.C. Cir. 1990) ("Indeed, the Restatement clearly assumes that the end of a lease need not spell the end of damage remedies that it provides, saying that a lease may obligate the tenant to make payments 'equal to the rent ... or in some other amount, when the lease is terminated prematurely.' 1 Restatement § 12.1 comment g. . . . [I]t is clear that a contract's provisions can define and provide remedies even after all obligations to perform under the contract have been discharged."); *D.W.S. Washington Holdings, Inc. v. Jackson*, 739 F. Supp. 19, 22 (D.D.C. 1990) ("'. . . a landlord may not, *without a covenant in a lease imposing liability for damages after eviction* . . . demand continued payments. [Citations omitted.]'  *LJC Corp. v. Boyle,* 768 F.2d

17

1489 (D.C. Cir.1985) (emphasis added).  The fact of the matter, which the defendants steadfastly

ignore, is that the lease in the instant case contains a provision, as discussed above, which holds

the Tenant liable for the damages that the Landlord suffers from the loss of future rent after the

termination of the lease due to Tenant's default."); *Slayton v. Jordan*, 42 App. D.C. 421, 424-25

(D.C. 1914).

       While Defendant's counsel alludes to potential coercion by Plaintiff to sign the Surrender

Agreement, this insinuation is belied by both the Surrender Agreement itself and Defendant's

counsel's lack of substantiation for her allegation, included only in her Affidavit.  Ms. Nasuti

states:  "[I]n January 2006, the landlord (through Mr. Gittleson and counsel) prepared a

document which we were required to sign before it would allow Harrison Career Institute to

remove its personal property and equipment from the premises."  Aff. of Marie V. Nasuti, ¶ 5.

Aside from Defendant's lack of further substantiation of any alleged coercion, however, the

Surrender Agreement (signed by Ms. Nasuti herself) contractually refutes any suggestion that

Defendant was under duress:  "The parties acknowledge and agree that they have read this

Agreement, that they understand its meaning and contents, that they have had the advice of their

respective counsel, and that they have *voluntarily executed this Agreement,* intending to be bound

by it."  Pl.'s Mot. for Default J., Ex. A, ¶ 7 (emphasis added).

       Finally, Defendant cannot prevail on a defense that the Surrender Agreement is faulty or

not binding without presenting evidence to support this claim.  Defendant maintains that "[t]here

was agreement between the parties that defendant would pay the rents due to that date [January

10, 2006] and its obligation under the lease would end . . . ."  Def.'s Mot. to Set Aside Default J. ¶

16(B)(a).  Defendant offers no evidence to substantiate this claim—no documentation of alleged

18

parole agreements between Plaintiff and Defendant and no written documents absolving

Defendant of continued responsibility under the Lease Agreement.  As such, this Court does not

find this assertion credible.  Mr. Fred Fitchett, President of HCI, asserts that "[p]art of [HCI's]

ultimate decision to vacate the premises was based on . . . information" that Plaintiff "had an

active party prepared to lease the premises being vacated."  Aff. of Fred Fitchett, ¶ 7.  Ms. Nasuti

also alludes to this understanding: "At the conclusion of my negotiations with Mr. Gittleson [of

Empire Leasing, the company contracted by 16 Cobalt LLC to manage the property] and

plaintiff's attorney in January of 2006, I was under the impression that there was an agreement

that Harrison would not be responsible for rents beyond January 10, 2006."  Aff. of Marie Nasuti,

¶ 13.  Again, this is the extent of evidence offered by Defendant in support of its first

"meritorious defense."  The insufficiency of this defense is compounded by Ms. Nasuti's

signature on the Surrender Agreement, which expressly "does not absolve [Defendant] from

liability for all past and future rent due under the lease," Pl.'s Mot. for Default J., Ex. A, ¶ 4, and

"constitutes the entire agreement between the parties and supercedes all prior agreement,

negotiations, considerations and representations between the parties," *id.* ¶ 6.

The Court concludes that the terms of the Surrender Agreement are unambiguous, and

accordingly "[Defendant's] unconditional surrender of the Leased Premises d[id] not absolve it

from liability for all past and future rent due under the Lease."  Therefore, the Court conclusively

finds that Defendant is liable for "future rent" due under the Lease and denies Defendant's

Motion to Set Aside Default Judgment as to this finding.  Accordingly, as Defendant has not

refuted the amounts provided by Plaintiff in its [8] Supplement, the Court concludes that

Defendant is liable to Plaintiff for the amounts stated in ¶ 1(a)-(e) of its Supplement, less any

necessary subtractions and without deciding when such payment is due, both of which shall be

addressed in the following subsection.  However, the Court notes that Plaintiff's arithmetic in

paragraph 4 of the Supplemental Affidavit of Tonya G. Gaskins-Saunders, attached to the [8]

Supplement, was incorrect such that the amount of reasonable attorneys' fees that Plaintiff

incurred in this action between January 2006 and July 20, 2006 was $10,315.00, not $12,845.00,

and that Defendant is accordingly liable to Plaintiff for the correct amount of $10,315.00, not

$12,845.00 for such attorney's fees.

> b.    *While Plaintiff has met any mitigation obligations it may have with respect to the new leases it has already entered as set forth in its [8] Supplement, the Court requires additional information from the Parties before ruling on Defendant's Motion to Set Aside Judgment with respect only to damages owed to Plaintiff*

Defendant's next defense relates to Plaintiff's alleged duty and failure to mitigate future

rent payments owed by Defendant.  Defendant asserts that "[i]t is clear that a claim for future

rents under a lease agreement requires proof of reasonable efforts at mitigation of those damages

by the landlord in re-renting the premises."  Def.'s Mem. to Set Aside Default J. at 5.  However,

assuming *arguendo* that a duty to mitigate exists, failure to mitigate is an affirmative defense, *see*

Fed. R. Civ. P. 8(c), and as such, "the tenant has the burden of showing the absence of reasonable

efforts to mitigate."  *Norris v. Green*, 656 A.2d 282, 287 (D.C. 1995).

Defendant has failed to meet this burden with respect to the leases set forth by Plaintiff in

¶ 1(g) of its [8] Supplement.  Defendant claims that Plaintiff is re-letting the commercial property

in question at rates "significantly less than what was found to be a reasonable mutually agreeable

rental rate for the premises in light of its desirability and locale."  Aff. of Fred Fitchett, ¶ 6.

While the current lease agreements Plaintiff has established with new tenants as set forth in

20

Plaintiff's [8] Supplement admittedly yield lower rental intake amounts than the Base Rent amount agreed to by Plaintiff and Defendant in the Lease Agreement, Defendant offers no tangible evidence to substantiate the claim that such amounts are "unreasonable" other than Mr. Fitchett's opinion as to the 1627 K Street NW property's desirability. It is also unclear how "[t]he fact that only a portion of the two floors are presently rented is a reflection of subpar effort on plaintiff's part to re-rent the entire premises." Def.'s Mem. to Set Aside Default J. at 6. The aforementioned Lease Agreement between Plaintiff and Defendant did not include the "entire premises" or even the entire ninth and tenth floors of 1627 K Street, but only the tenth floor and "a portion of the ninth floor." Pl.'s Opp'n at 2. Accordingly, as Defendant has not sustained its burden of demonstrating that these leases are unreasonable, the Court holds that they are presumptively reasonable for their respective, individual terms of lease such that Defendants cannot revisit this issue, as such leases fulfill Plaintiff's duty to mitigate during their respective time periods for their respective spaces if such a duty exists.

However, the Court is still left with a number of unanswered questions in determining whether to grant or deny Defendant's Motion to Vacate Default Judgment with respect to the amount and timing of Defendant's payments to Plaintiff. The Parties' extremely sparse and cursory briefing on the matters of mitigation of damages and timing of payments provided little guidance to the Court on the following four umbrella issues, about which the Court shall require the Parties to submit additional briefing with well-crafted, substantiated legal arguments, focusing on the Lease, the Surrender Agreement, and applicable District of Columbia law with respect to commercial leases: 1) On which provision(s) of the Lease did Plaintiff rely upon Defendant's default on the lease?; 2) What is Plaintiff's duty to mitigate, if any, in this case?; 3)

Is Plaintiff entitled to one up-front payment from Defendant, or are Defendant's payments appropriately made in periodic intervals?; and 4) If Plaintiff cannot collect payment for future rent now, how should future payments be calculated?  The Court shall clarify as follows:

1)  The Lease Agreement provides that

> [o]n the occurrence of any Event of Default, the Landlord may . . . take any or all of the following actions:
>
> 13.3.2.  declare the entire balance of the Rent for the remainder of the Term to be due and payable, and collect such balance in any manner not inconsistent with applicable law;
> . . .
> 13.3.4.  relet any or all of the Premises for the Tenant's account for any or all of the remainder of the Term as herein above defined, or for a period exceeding such remainder, in which even the Tenant shall pay to the Landlord, at the times and in the manner specified by the provisions of Section 2, the Base Rent and any Additional Rent accruing during such remainder, less any monies received by the Landlord, with respect to such remainder, from such reletting, as well as the cost to the Landlord of any attorneys' fees or of any repairs or other action (including those taken in exercising the Landlord's rights under any provision of this Lease) taken by the Landlord on account of such Event of Default;

Pl.'s Mot. for Default J., Ex. B, § 13.3.  Furthermore, the Surrender Agreement reads:

> Tenant acknowledges that its unconditional surrender of the Leased Premises does not absolve it from liability for all past and future rent due under the Lease.  Tenant acknowledges that this Agreement does not constitute a waiver or release of any of Landlord's rights under the Lease, at common law, or in equity, to recover all rent and other damages due to Landlord as a result of Tenant's breach of the lease.
>
> Landlord agrees that if it leases any or all of the Leased Premises to another tenant or tenants during any part of the remaining term of the Lease, Landlord will deduct the rent received from such tenant(s) from the amount owed by Tenant to Landlord as a result of its breach of the Lease.

Surrender Agreement ¶¶ 4, 5.  Plaintiff has not indicated pursuant to what particular provision or provisions of the Lease it seeks future rent (to which it is entitled as discussed in the preceding subsection) from Defendant.

2) Plaintiff claims that it does not have any duty to mitigate by leasing the property in question, while Defendant claims that such a duty is imposed by District of Columbia law.  The Parties, however, do not address a) whether under District of Columbia law, the duty to mitigate always applies or can be eliminated via contract; and b) if the duty to mitigate can be eliminated via contract, whether § 13.3.2 or § 13.3.4 of the Lease or any provision of the Surrender Agreement eliminates said duty.  The Court notes that § 13.3.2 states that Plaintiff may "declare the entire balance of the Rent for the remainder of the Term to be due and payable, and collect such balance in any manner *not inconsistent with applicable law*."  Does "applicable law" include a duty to mitigate?  On the other hand, does § 13.3.4, which states that Defendant's payments be reduced "less any monies received by the Landlord" incorporate a duty to mitigate such that Defendant must relet its property at a "reasonable" rate, or can Defendant relet its property at any rate so long as Defendant's payments are reduced accordingly?

3) Legally, when is Plaintiff entitled to collect damages for future rent?  Can Plaintiff collect the full amount through the end of the Lease term (2014) now?  Or is Plaintiff entitled to payment at certain intervals?  Is this contingent on the lease default term invoked by Plaintiffs, or is there some standard answer pursuant to District of Columbia law?  For example, pursuant to § 13.3.2 of the Lease, if Plaintiff "declare[s] the entire balance of the Rent for the remainder of the Term to be due and payable," would collecting such balance now in its entirety be "inconsistent with applicable law"?  Or, since Plaintiff has already relet its property, do the terms of § 13.3.4 of the Lease require that Defendant submit monthly payments for the term of the Lease pursuant to the Court's initial reading of Section 2 of the Lease?  *See* § 13.3.4 ("the Tenant shall pay to the Landlord, at the times and in the manner specified by the provisions of Section 2, the Base Rent

and any Additional Rent accruing during such remainder, less any monies received by the Landlord, with respect to such remainder, from such reletting[.]"

4) Finally, if Plaintiff cannot collect future damages now, either pursuant to District of Columbia law or the Lease or both, in what manner shall Defendant pay damages to Plaintiff? If Plaintiff does have a duty to mitigate, how is the Court to calculate "reasonable" mitigation for each future payment period? Can that figure be determined now? The Court notes that one of Plaintiff's new leases ended in 2006–if this space is presently unoccupied, how (if at all) should the Court factor this into its decision?

## III.  CONCLUSION

Based on the foregoing, the Court shall DENY [11] Defendant's Motion to Deem Prior Motion to Set Aside Judgment as Filed Nunc Pro Tunc, and DENY IN PART and HOLD IN ABEYANCE IN PART Defendant's [12] Motion to Set Aside Default Judgment. Defendant's Motion to Set Aside Default Judgment is DENIED with respect to the Court's finding that Defendant is liable to Plaintiff for past and future rent until the end date of the Lease. Defendant's Motion to Set Aside Default Judgment is HELD IN ABEYANCE with respect to the amount and timing of Defendant's payments to Plaintiff pending further briefing from the Parties as set forth in this Opinion, acknowledging that Defendant is prohibited from contesting the amounts set forth in ¶ 1(a)-(e) of Plaintiff's [8] Supplement (as amended by the Court in this Opinion) as well as the reasonableness of the leases set forth in ¶ 1(g). The Parties shall file a

Joint Status Report by April 11, 2007, setting forth a concurrent briefing schedule on the issues

requiring further briefing.  An Order accompanies this Memorandum Opinion.

Date:   March 28, 2007

                                                    _____/s/_____
                                                    COLLEEN KOLLAR-KOTELLY
                                                    United States District Judge