IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| 16 COBALT LLC<br>1015 31st Street<br>Suite 300<br>Washington, D.C. 20007<br><br>         Plaintiff,<br>    v.<br><br>HARRISON CAREER INSTITUTE<br>Plaza 1000 Main Street<br>Suite 310<br>Voorhees, New Jersey<br><br>         Defendant. | Civil Action<br><br>CASE NUMBER  1:06CV000175<br><br>JUDGE:  Colleen Kollar-Kotelly |

## MEMORANDUM RESPONSIVE TO THE COURT'S ORDER

This memorandum is submitted in accordance with the Court's direction in its Memorandum Opinion dated March 28, 2007 ("Decision"). 16 Cobalt LLC ("Cobalt" or "Plaintiff") and Harrison Career Institute ("HCI" or "Defendant") agreed to file simultaneous briefs. In its Decision, the Court pointed to four questions with respect to the amount and timing of Defendant's payments to Plaintiff that were deemed unanswered by the earlier briefing exchange regarding the Defendant's Motion to vacate Default Judgment. This memorandum addresses the four issues.

1

### 1. On Which Provision(s) Of The Lease Did Plaintiff Rely Upon Defendant's Default?

The Court's Decision correctly identifies the key language in the Lease agreement between the parties with respect to the choices that the Plaintiff had in deciding its remedies, it determined that Defendant had prematurely vacated the premises. Specifically, Paragraph 13 provides for the Landlord's options to that extent.

Lease Paragraph 13.3.2 provides that Plaintiff can "declare the entire balance of the remainder of the Term to be due and payable, and collect such balance in any manner not inconsistent with applicable law." Paragraph 13.3.4 provides that Plaintiff can "relet any or all of the Premises for the Tenant's account for any or all of the remainder of the Term . . . in which event the Tenant shall pay to the Landlord, at the times and in the manner specified by the provision of Section 2, the Base Rent and any Additional Rent accruing during such remainder, less any monies received by the Landlord, with respect to such remainder, from such reletting . . ."

Based on elemental principles of contract interpretation, the Landlord has two (2) choices upon abandonment of the property by the Tenant. First, it can relet the premises pursuant to Paragraph 13.3.4. Or, second, it can decide not to relet and declare the total amount due and owing, so long as doing so is not inconsistent with applicable law.

This election is consistent with applicable District of Columbia law. See, Hart v. Vermont Investment Limited Partnership, 667 A.2d 578, 587 (D.C. 1995). In Hart, the court noted that the law of the District of Columbia provides a

landlord with three (3) options in the event of a tenant abandons leased property. First, it may accept the abandonment and thereby terminate the lease. If the landlord elects this option, the tenant's obligation to pay future rent ceases, but the tenant is still liable for damages specified in the contract as a remedy for its breach, such as attorney's fees and reletting costs. Second, the landlord may relet some or all of the premises and hold the tenant liable for any deficiency in the rent, without acquiescing to the abandonment. In that case, D.C. law construes a lease provision giving the re-entering lessor a right to lost rents as creating a right to damages, thereby subject to the mitigation doctrine. Hart, 667 A.2d at 587; see also, Lennon v. United States Theatre Corp., 287 U.S. App..D.C. 202, 206, 920 F.2d. 996, 1000 (D.C. 1990). Third, a landlord may allow the premises to remain vacant and hold the tenant for the full rent. Hart, 667 A.2d at 587; see also, Truitt v. Evangel Temple, Inc., 486 A.2d 1169, 1173 (D.C. 1984).

  Here, Plaintiff elected the second option, both under the lease and District of Columbia law. Plaintiff re-entered the leasehold and has relet some of the premises. Plaintiff's intent in this regard is further evidenced by the language of the Surrender Agreement referenced in the Court's earlier memorandum at page 22. Accordingly, as noted in the Decision, Plaintiff has actively entered and re-let the premises. Thus, any recovery by Plaintiff is subject to mitigation under applicable law.

**2.    What Is The Extent Of Plaintiff's Duty To Mitigate, If Any, In This Case?**

As noted above, Plaintiff has a duty to mitigate. This is read into the contract consistent with District of Columbia law. Having undertaken to re-let the premises, Plaintiff must demonstrate it exercised reasonable mitigation efforts. See, Satin v. Buckley, 246 A.2d 778 (D.C. 1968). In the instant case, the premises in question are immediately and unquestionably rentable. Plaintiff's duty to mitigate its damages commenced with the recovery of possession on January 10, 2006. The fact that only a portion of the leased premises are apparently rented confirms that Plaintiff did not undertake adequate efforts to relet the entire premises.

**3.    Is Plaintiff Entitled To One Up-Front Payment From Defendant, Or Are Defendant's Payments Appropriately Made At Periodic Intervals?**

Since Plaintiff elected its option under the lease to re-let the property, the rights and responsibilities of both parties are governed by the express terms of Paragraph 13.3.4, which provides that Plaintiff may:

> "[R]elet any or all of the Premises for the Tenant's account for any or all of the remainder of the Term as herein defined, or for a period exceeding such remainder, in which event the Tenant shall pay to the Landlord *at the times* and in the manner specified by the provision of Section 2, the Base Rent and any Additional Rent *accruing* during such Remainder, less any monies received by the Landlord, with respect to such remainder from such re-letting . . ." (emphasis added).

The lease contract constitutes the agreement between the parties and expressly spells out the manner in which default rent payments are to be paid. Where the language of a lease is clear and unambiguous, a court may not rewrite it to relieve one party from a bargain that did not turn out to that party's

4

advantage. See, e.g., Hart, 667 A.2d at 586. Thus, the express terms of the lease provide that payments are due at appropriate intervals and as they accrue. Such an interpretation is reasonable and consistent with District of Columbia law. See, McIntosh v. Gitomer, 120 A.2d 205 (D.C. 1956). Accordingly, Plaintiff is not entitled to collect future unpaid rents until they accrue. It is only at that point that such amount become due and owing, subject to those offsets received and accrued by Plaintiff through its on-going efforts to relet the subject premises.

### 4. If Plaintiff Cannot Collect Payment For Future Rent Now, How Should Future Payments Be Calculated?

Although the court in McIntosh makes it clear that Plaintiff's action is premature under District of Columbia law, at least one court has indicated that separate consecutive actions may lie for those portions of accrued rents which will also be offset by the mitigation that has also accrued for the same period, if the parties so stipulate in the lease. See, Sanders v. Kahn, 134 A.2d 107, 108 (D.C. Municipal Ct. of App. 1957). The same rule has been applied in other jurisdictions having similar mitigation rules, despite an absence of governing lease language. See, e.g., Vareka Investment, N.V. v American Investment Properties, Inc., 724 F.2d 907, 912 (11th Cir. 1984) (construing Florida law); Leksa v. Municipal Court of Ventura County, 138 Cal. App. 3d 188, 187 Cal. Rptr. 698 (Cal. Ct. App. 1982) (construing California law); John Malaksy, Inc. v. Mayonne, 54 A.D.2d 1059, 388 N.Y.S.2d 943 (N.Y. App. Div. 1976) (construing New York law).

Such a rule is consistent with rendering a fair assessment of damages, as well as avoiding the potential of a windfall to Plaintiff from an attempt to project

5

reasonable damages and mitigation efforts into the distant future. However, Plaintiff's action is premature under <u>Gitomer</u> given the absence of lease language that Plaintiff could have incorporated permitting separate actions as rents accrue.

        Respectfully submitted,

        Harrison Career Institute
        By Counsel

        _____/s/_____
        MARIE NASUTI, Esq. (Not admitted in D.C.) (Motion to appear *Pro Hac Vice* submitted)
        Harrison Career Institute
        Plaza 1000 Main Street
        Suite 310
        Voorhees, New Jersey 08043
        (856) 669-2000
        (856) 669-0202 (fax)
        Attorney for Defendant, Harrison Career Institute

        _____/s/_____
        PETER S. LEYTON, Esq. (D.C. Bar No. 337634)
        STEVEN M. GOMBOS, Esq. (Not admitted in D.C.)
        Ritzert & Leyton, P.C.
        11350 Random Hills Road, Suite 400
        Fairfax, Virginia 22030
        (703) 934-2660
        (703) 934-9840 (fax)
        Local Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2007, a copy of the foregoing Memorandum Responsive to the Court's Order was faxed and sent first class U.S. mail (postage prepaid) to the following:

Tonya G. Gaskins-Saunders, Esq.
Pillsbury, Winthrop, Shaw, Pittman, LLP
2300 N. Street N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)
Counsel for Plaintiff

                          /s/
                    Marie Nasuti, Esq.
                    Peter S. Leyton, Esq.
                    Steven M. Gombos, Esq.