IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 16 COBALT LLC )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HARRISON CAREER INSTITUTE )<br>)<br>Defendant. )<br>) | Civil Action<br>No. 1:06CV00175<br>Judge Colleen Kollar-Kotelly |

**PLAINTIFF'S SUPPLEMENTAL BRIEF**

Plaintiff 16 Cobalt LLC ("16 Cobalt") submits this supplemental brief pursuant to this Court's Memorandum Opinion of March 28, 2007 requesting further briefing by the parties on the following four questions:

1) On which provision(s) of the Lease did Plaintiff rely upon for Defendant's default on the Lease?;

2) What is Plaintiff's duty to mitigate, if any, in this case?;

3) Is Plaintiff entitled to one up-front payment from Defendant, or are Defendant's payments appropriately made in periodic intervals?; and

4) If Plaintiff cannot collect payment for future rent now, how should future payments be calculated?

II. **Argument**

   A. **On What Provision of the Lease Did Plaintiff Rely upon for Defendant's Default on the Lease?**

   **Answer:** <u>Plaintiff Relied upon Section 13.3.2 for Defendant's Default under the Lease. That Section Controls the Timing of Payment and Requires that Harrison Make One Up-Front Payment in Accordance With District of Columbia Law.</u>

   16 Cobalt terminated the Lease with Harrison pursuant to 13.3.2 of the Lease based on Harrison's failure to make timely Rent payments. Complaint ¶ 14. Section 13.3 of the Lease, under the title Landlord's Rights on Event of Default, provides that:

> On the occurrence of any Event of Default, the Landlord may (subject to the operation and effect of the provisions of subsection 13.2) take any or all of the following actions:
>
> ...
>
> 13.3.2 *declare the entire balance of the Rent for the remainder of the term to be due and payable*, and collect such balance in any manner not inconsistent with applicable law;

Lease §§ 13.3 and 13.3.2 (emphasis added). When Harrison failed to make timely rental payments for the months of June, July, August, September, October, November and December of 2005 and January of 2006, 16 Cobalt terminated the Lease and declared Harrison in default pursuant to 13.3.2 of the Lease. Complaint ¶ 14. As provided in that Section, 16 Cobalt accelerated the payment due under the Lease and required that Harrison make one up-front payment covering "the entire balance of Rent for the remainder of the Term," effectively establishing the timing and the measure of damages in this case. Lease § 13.3.2 and Complaint ¶ 14.

The covenants of a lease control the relationship between the parties, as such, a landlord may impose liability for damages after eviction if the provisions of the lease entitle the landlord to do so. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1493 (D.C. Cir. 1985). *See also Lennon v. United States Theatre Corp.*, 920 F.2d 996, 1000 (D.C. Cir. 1990) (The lease controls the relationship between the parties and the right to damages.). Where the covenant of a lease entitles the landlord to accelerate payment, thus setting the timing of payment in the event of default, the acceleration clause in the lease is valid. *See* 49 Am. Jur. 2d Landlord & Tenant § 58 (2006) ("[I]t is within the right of the parties to a lease to agree that the time for the payment of the rent might be accelerated, in certain contingencies."). *See generally Cafritz Constr. Co. v. Mudrick*, 59 F.2d 864 (D.C. 1932) (Court held that an acceleration clause contained in a deed of trust was valid.)

In *Consumers United Ins. Co. v. Smith*, 644 A.2d 1328, 1340-41 (D.C. 1994), the Court of Appeals held that damage awards are proper in a lump sum where the lessee breaches a lease for years. While the *Consumers United Ins. Co.* case dealt with abandonment by the lessee, it involved lease provisions similar to those permitting acceleration, thus, this case is analogous to the case at hand. The Court in *Consumer United Ins. Co.* concluded that "[b]ecause damages are payable as of the date of judgment in a lump sum, rather than as they accrue over the balance of the lease term, . . . future damages must be reduced or discounted to the 'present value' of receiving the sum over time . . . . This means that both the balance of the agreed rent yet unpaid on the date of breach and the fair rental value of the lease on the date of breach – which are to be compared in order to ascertain changes – represent sums calculated for a future period but discounted to present value." *Id.* at 1340 (internal citation omitted) (Court concluded that

3

"Smith was entitled to the difference between the total amount CUIC promised to pay under the lease for the balance of the rental period after the breach (discounted at 10% per year) [, as specifically provided for under the Lease,] and the total amount Smith could reasonably expect to receive for that entire period upon reletting the premises after the breach (discounted to reflect present market value)."). *Id.* at 1340-41.

In this case, the unambiguous language of Section 13.3.2 entitled 16 Cobalt to seek the unpaid rent for June 2005 through January 2006 and damages in the amount of the remaining Rent for the remaining Lease Term. Effectively, this is an action for breach of contract, as such those damages, as with any damage award, are payable in a single lump sum. *Id.* Since the sum awarded under the default judgment takes into consideration the market value of the Leased Premises, as demonstrated by the sum received from re-letting the premises, and the total sum outstanding under the remaining Lease term, the default judgment is the proper measure of the present value owed in damages by Harrison.[1]

**B.   What is Plaintiff's Duty to Mitigate, if any, in this Case?**

**Answer:** <u>Plaintiffs' Duty to Mitigate was Either Waived by Harrison's Failure To Plead Waiver as an Affirmative Defense or Satisfied by 16 Cobalt's Subsequent Re-letting of the Lease Premises.</u>

While the Surrender Agreement does not necessarily impose a duty to mitigate, 16 Cobalt had an initial duty pursuant to District law and the Lease to mitigate its damages. Generally, under District law, "in the absence of a contractual provision reserving the landlord's right to re-enter and re-let upon tenant's default while holding

---

[1] The Lease at issue in this case does not provide for any discount.

4

the tenant liable for any deficiency or loss of rent, the landlord is under no obligation to mitigate damages . . . ." *Simons v. Fed. Bar Bldg. Corp.*, 275 A.2d 545, 550 (D.C. 1971). Where a lease provides for re-entry and re-letting, however, "a right to lost rent is construed as creating a right to damages, subject to the mitigation doctrine." *Lennon*, 920 F.2d at 1000. *See Satin v. Buckley*, 246 A.2d 778, 780-81 (D.C. 1968) (The covenant in the lease that established the lessor's right to re-enter and re-let the premises required the landlord "to make a reasonable effort to re-let the property for his benefit."). In this case, since the Lease provides for re-entry and re-letting, although this specific lease provision was not relied upon to terminate the lease, 16 Cobalt had a duty to mitigate its damages. Lease § 13.3.4. That duty, however, was both waived and satisfied.

1. <u>Harrison Waived its Right To Assert Mitigation as an Affirmative Defense When it Failed To Plead Mitigation Prior to the Entry of a Default Judgment Against it, Therefore, Harrison Must Pay the Full Amount of the Default Judgment.</u>

According to the District of Columbia Court of Appeals, "[i]n landlord and tenant law, mitigation must be raised as an affirmative defense." *Hinton v. Sealander Brokerage Co.*, 917 A.2d 95, 109 (D.C. 2007) (*citing Norris v. Green*, 656 A.2d 282, 287 (D.C. 1995)). Under Rule 8(c) of the Federal Rules of Civil Procedure, by not pleading mitigation as an affirmative defense, Harrison waived the right to assert mitigation in this case. Fed. R. Civ. P. 8(c). While not enumerated in Rule 8, the majority of federal courts have concluded that mitigation is an affirmative defense that must be pled or it is waived. *See Lennon*, 920 F.2d at 1000. *See also Reeves v. Carrollsburg Condo. Unit Owners Ass'n*, Civ. A. No. 96-2495 (RMU), 1997 U.S. Dist. LEXIS 21762, at *34 (D.C. Cir. Dec. 18, 1997) (Failure to plead mitigation in the answer resulted in a waiver of this defense.).

In *Scott v. Ind. State Prison*, Cause No. 3:98CV0473RM, 2000 U.S. Dist. LEXIS 7968 (N.D. Ind. Jan. 19, 2000), the District Court held that the affirmative defense of mitigation was waived by the defendants' failure to answer prior to a default judgment being entered against it. *Scott*, 2000 U.S. Dist. LEXIS 7968, at *3. While defendants could have asserted mitigation as an affirmative defense, their failure to file an answer and the consequent default entered against them waived their ability to assert mitigation as an affirmative defense.

Likewise, since a default was entered against Harrison, followed by a default judgment, all before Harrison raised the issue of mitigation as an affirmative defense, Harrison waived its right to assert the failure to mitigate as an affirmative defense to this action.

        2.    <u>16 Cobalt Satisfied Any Duty it Had to Mitigate Damages When it Re-let the Leased Premises, Therefore, Harrison Must Pay the Full Amount of the Default Judgment.</u>

Assuming *arguendo* that Harrison did not waive its right to assert mitigation as an affirmative defense, 16 Cobalt satisfied its duty to mitigate under District law when it re-let the Leased Premises to Wilshire DC Partners, Al Jazeera International, and Future Media Concepts, Inc. In fact, the very judgment award that Defendant complains about "takes into consideration the amounts received from tenants who presently occupy or who formerly occupied the Leased Premises." Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. to Set Aside Default J. at 12-14.

In determining whether the duty to mitigate was satisfied, a court must consider whether "[a] lessor use[d] 'reasonable efforts' to relet," a question of fact. *Lennon*, 920

F.2d at 1000 (internal citation omitted). *See Howard Univ. v. Lacy*, 828 A.2d 733, 739 (D.C. 2003) ("What is a reasonable effort to mitigate damages is a question of fact."). If the lessor's efforts are deemed reasonable any "damages will be computed as the rentals provided for in the lease (plus reletting expenses), less such rentals as the lessor would have received if it had made reasonable efforts" to relet the premises. *Lennon*, 920 F.2d at 1000. Critical to this analysis is the fact that "where a choice has been required between two reasonable courses," the court will not allow the contract breaker to use the mitigation doctrine as "a basis for hypercritical examination of the conduct of the injured party, or merely for the purpose of showing that the injured person might have taken steps which seemed wiser or would have been more advantageous to the defaulter." *Dist. Concrete Co. v. Bernstein Concrete Corp.*, 418 A.2d 1030, 1037 (D.C. 1980) (Court concluded that the choice of a particular building material was reasonable at the time it was made despite the fact that it later proved to be more expensive).

The party asserting mitigation as an affirmative defense bears "the burden of showing the absence of reasonable efforts to mitigate." *Norris*, 656 A.2d at 287. *See G & R Corp. v. Am. Sec. & Trust Co.*, 523 F.2d 1164, 1176 (D.C. Cir. 1975). *See also Camalier & Buckley-Madison, Inc. v. Madison Hotel, Inc.*, 513 F.2d 407, 420 (D.C. Cir. 1975) (citations omitted). Harrison has not satisfied its burden. Harrison attempted to satisfy its burden by presenting empty assertions regarding the reasonableness of rental rates charged by 16 Cobalt without providing any evidence proving that the rental rates are unreasonable. Mem. of Law in Supp. of Def.'s Mot. to Set Aside Default J. at 5-6. *See Norris*, 656 A.2d at 287-88 (Tenant's testimony with nothing else failed to satisfy the burden to prove that the landlord's attempt to mitigate was unreasonable.). Harrison has

not carried its burden because there are no facts that support its claim that 16 Cobalt's efforts to mitigate were in any way unreasonable.

16 Cobalt's efforts to re-let the Leased Premises once the parties executed the Surrender Agreement were reasonable. 16 Cobalt entered into a commercial property lease for a term of six years with Wilshire DC Partners for a portion of the 10th floor. (Total Rental Payments for: Year 1 = $118, 976.00, Year 2 = $121,950.00, Year 3 = $124,999.00, Year 4 = $128,124.00, Year 5 = $131,327.00, Year 6 = $134,610.00). Gittleson Supplemental Affidavit. 16 Cobalt entered into a commercial property lease for a term of four months with Al Jazeera International (USA) Inc. for a portion of the 10th floor for $16,862.50 per month. *Id.* 16 Cobalt entered into a commercial property lease for a term of ten years with Future Media Concepts, Inc. for a portion of the 9th floor. (Total Rental Payments for: Year 1 = $111,746.00, Year 2 = $114,539.00, Year 3 = $117,403.00, Year 4 = $120,338.00, Year 5 = $123,346.00, Year 6 = $126,430.00, Year 7 = $129,591.00, Year 8 = $132,830.00). *Id.* Harrison did not present any evidence to suggest that these arrangements were unreasonable in comparison either to the market or the available tenant pool for this building.

**C.    Is Plaintiff Entitled to One Up-Front Payment from Defendant, or Are Defendant's Payments Appropriately Made in Periodic Intervals?**

**Answer:** <u>16 Cobalt is Entitled to One Up-Front Payment from Harrison in the Full Amount of the Default Judgment.</u>

As stated above, the Lease provides that 16 Cobalt is entitled to immediately collect damages in the event of Defendant's default under the Lease. Lease § 13.3.2. The basis for termination of the Lease did not rest upon 13.3.4 of the Lease; the provision

400576342v1

of the Lease that provides for re-letting of the premises, which permitted periodic payments, rather the Lease was terminated pursuant to 13.3.2 which required accelerated payment of all sums due and owing under the Lease. As described in response to the first question, the Lease provision for damages, in the form of accelerated payment of all future rent, is enforceable under District of Columbia law and results in a single damage award that should be payable in one up-front payment, as would be the case with any other damage award.

**D.  If Plaintiff Cannot Collect Payment for Future Rent Now, How Should Future Payments be Calculated?**

**Answer:** <u>One Up-Front Payment is Proper Under the Circumstances.</u>

As described above, under District law and the Lease in this case, 16 Cobalt has the right to collect one up-front payment. If 16 Cobalt had chosen to proceed under Section 13.3.4 of the Lease, it could have sued each month for the Rent due, and the issue of future rent would be moot. 16 Cobalt did not choose that method, however, due to the obvious inefficiencies for both the parties and the Court in such an approach.

Dated:  May 25, 2007					Respectfully submitted,

						_____/s/_____
						David J. Cynamon (D.C. Bar # 182477)
						Tonya G. Gaskins-Saunders (D.C. Bar # 484414)
						PILLSBURY WINTHROP SHAW
						PITTMAN LLP
						2300 N Street, N.W.
						Washington, D.C. 20037
						Phone: (202) 663-8000
						Fax:    (202) 663-8007

						*Counsel for Plaintiff*
						*16 Cobalt LLC*