UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

16 COBALT LLC,

Plaintiff,

v.

HARRISON CAREER INSTITUTE,

Defendant.

Civil Action No. 06–175 (CKK)

**MEMORANDUM OPINION**
(December 8, 2008)

On March 28, 2007, this Court entered an order that denied in part and held in abeyance in part Defendant's [12] Motion to Set Aside Default Judgment. 03/28/07 Order, Docket No. [19], ("Order"). Specifically, the Court denied Defendant's motion to set aside the default judgment as to Plaintiff's liability, but determined that further briefing was necessary to determine whether the amount and timing of the damages awarded to Plaintiff in the default judgment order should be set aside or otherwise modified. *Id.* Accordingly, the Court held in abeyance Defendant's motion with respect to the amount and timing of Defendant's payments to Plaintiff pending further briefing from the parties. *Id.* The parties subsequently submitted the requested additional briefing, and now pending before the Court are Plaintiff's [24] Supplemental Brief ("Pl.'s Supp. Response"), Defendant's [23] Memorandum Responsive to the Court's Order ("Def.'s Supp. Response"), and Plaintiff's [25] Reply to the Defendant's Memorandum Responsive to the Court's Order (Pl.'s Reply to Def.'s Supp. Response"). Although both parties had the option of filing a reply, Defendant declined to do so. After a thorough review of the parties' submissions and applicable case law, the Court shall deny in part

and hold in abeyance in part Defendant's Motion to Set Aside Default Judgment, as to the amount and timing of damages, for the reasons that follow.

## I. BACKGROUND

The Court shall assume familiarity with the Court's March 28, 2007 Memorandum Opinion, *see 16 Cobalt LLC v. Harrison Career Institute*, Civil Action No. 06-175 (D.D.C. Mar. 28, 2007) (hereinafter "Slip Op."), which sets forth in detail the factual background of this case, and shall therefore only briefly address such facts as are necessary for resolution of the issues currently before the Court.

### *A. Procedural Background*

On December 9, 2003, K Associates, the predecessor in interest to Plaintiff, entered into a ten-year commercial property lease with Defendant to commence in January of 2004 for a portion of the ninth floor and the entire tenth floor of the Building (the "Leased Premises") at 1627 K Street, NW, Washington, D.C. Pl.'s Mot. for Default J., Docket No. [6], ¶ 3 & Ex. B (Lease); Def.'s Mot. to Set Aside Default J., Docket No. [12], ¶¶ 1, 2. Defendant, however, ceased paying the monthly rent in June of 2005. Pl.'s Mot. for Default J. ¶ 5. On January 6, 2006, the parties signed an Agreement for Unconditional Surrender of Premises. Pl.'s Mot. for Default J., Ex. A ("Surrender Agreement"). On January 10, 2006, pursuant to the Surrender Agreement, Defendant vacated the Leased Premises, but "has not paid any of the Rent due and owing." Pl.'s Compl., Docket No. [1], ¶ 16.

On January 31, 2006, Plaintiff filed a Complaint for Damages against Defendant to recover damages suffered as a result of Defendant's breach of a written lease agreement. Pl.'s Compl. Having received no answer or response from Defendant, Plaintiff subsequently filed its

First Motion for Default Judgment against Defendant, requesting the entry of a default judgment in the amount of $3,381,801.22. Pl.'s Mot. for Default J. at 1. Upon request of the Court, Plaintiff also filed a Supplement to its Motion for Default Judgment, which revised Plaintiff's damages claim to $1,972,247.62 and provided an itemized detail of the amounts of revised damages requested. *See* Supp. Mot. for Default J., Docket No. [8]. Specifically, Plaintiff requested: (a) the total value of the lease (*i.e.*, past rent due and future rent that would have been paid through the term of the lease ending in 2014), late charges, attorneys' fees and costs, as well as leasing commission fees and tenant improvement costs incurred in reletting the premises; *minus* (b) the security deposit paid by Defendant and the rental payments (both past and future) due from three new tenants to whom Plaintiff had relet portions of the Leased Premises.[1] *See id.* Based on the Plaintiff's supplemented information, the Court issued an Order and Final Judgment for Plaintiff ("Final Default Judgment"), in the amount of $1,972,247.62. Order and Final J., Docket No. [9].

*B. The Court's Order on Defendant's Motion to Set Aside Default Judgment*

Defendant subsequently filed a Motion to Set Aside Default Judgment, *see* Mot. to Set Aside Default J., Docket No. [12], which the Court denied in part and held in abeyance in part, *see* Order; *see also* Slip. Op. at 1. Specifically, the Court denied Defendant's motion as to liability, finding that Defendant had not demonstrated excusable neglect and did not have any complete meritorious defenses to liability. *See* Slip. Op. at 7-21, 24. Accordingly, the Court

[1]Plaintiff relet: (1) a portion of the 10th floor for a six-year term ending in 2012 to Wilshire DC Partners; (2) a portion of the 10th floor for a four-month period ending in July of 2006 to Al Jazeera International (USA) Inc.; and (3) a portion of the 9th floor for a ten-year term ending in 2016 to Future Media Concepts, Inc. Order and Final J.

refused to set aside the default judgment entered against Defendant holding it liable to Plaintiff for damages as specified in the Lease—*i.e.*, past and future rent through the end date of the Lease term. *Id.* at 19-20.

As is relevant to the issues at hand, however, the Court explained that, because of the "parties' extremely sparse and cursory briefing," the Court was "still left with a number of unanswered questions . . . with respect to the *amount* and *timing* of Defendant's payments to Plaintiff." *Id.* at 21 (emphasis added). Although the Court determined that Plaintiff is legally entitled, both under the terms of the parties' Lease and applicable District law, to collect both past and future rent owed by Defendant, the Court was unable to determine two key issues regarding future rent owed by Defendant: (a) whether the amount of damages must be reduced to reflect Plaintiff's reasonable efforts to relet the Leased Premises and any rents thus obtained, and, if so, by how much; and (b) whether the damages, as related to future rents owed, could be legally paid in a single lump sum now or rather must be paid in periodic installments as such rents become due. *See id.* at 21-24. The Court therefore held in abeyance the Defendant's Motion to Set Aside Default Judgment as to the amount and timing of payment and requested additional briefing to assist in determining the damages owed by Defendant to Plaintiff. *Id.* The Court emphasizes that these are the *only* questions now before the *Court—i.e.*, whether the amount and timing of the damages award originally granted to Plaintiff should be set aside or otherwise modified.

## II. DISCUSSION

At the outset, the Court notes that the question of the amount and timing of Plaintiff's damages, as they relate to future rents owed under the Lease, implicates issues that are, in the

views of courts and commentators alike, "'complex' and 'confus[ing].'" *See Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650, 667 (E.D. Penn. 2003) (internal citations omitted). Unfortunately, despite multiple rounds of briefing, the parties' analysis of these issues remains sparse and cursory, leaving the Court to navigate the murky legal waters largely on its own. As a result, the Court finds—once again—that the record before it remains insufficient to permit complete resolution of the questions raised in this case.

Because the amount of damages owed by Defendant to Plaintiff ultimately turns on the terms of the parties' Lease, the Court first addresses the applicable lease provisions before turning to a calculation of the damages owed Plaintiff.

*A. Applicable Lease Provisions*

Under the law of the District of Columbia (the "District"), "a covenant in a lease imposing liability on the tenant after eviction for default is valid, but such liability is one for damages and not for rent and is to be measured strictly by the covenant provisions." *McIntosh v. Gitomer*, 120 A.2d 205, 206 (D.C. 1956). In other words, "when a landlord accepts a 'voluntary surrender' by the tenant he foregoes the right to collect *rent* . . . but it does not eliminate an otherwise applicable right to *damages*." *Lennon v. United States Theatre Corp.*, 920 F.2d 996, 1000 (D.C. Cir. 1990) (emphasis added). Plaintiff agreed to terminate the Lease, pursuant to the Surrender Agreement signed by the parties on January 6, 2006. Accordingly, Plaintiff is not entitled to collect future rents for the period of time after the Lease was terminated, but rather may collect damages as provided for in the Lease. The Court therefore turns to the terms of the parties' Lease.

The relevant sections of the Lease provide as follows:

> 13.3. Landlord's Rights on Event of Default. On the occurrence of any Event of Default, the Landlord may . . . take any or all of the following actions, *inter alia*:
> 13.3.1. re-enter and repossess the Premises and any and all improvements thereon and additions thereto;
> 13.3.2. declare the entire balance of the Rent for the remainder of the Term to be due and payable, and collect such balance in any manner not inconsistent with applicable law;
> . . .
> 13.3.4 relet any or all of the Premises for the Tenant's account for any or all of the remainder of the Term . . . in which event the Tenant shall pay to the Landlord, at the times and in the manner specified by the provisions of Section 2, the Base Rent and any Additional Rent accruing during such remainder, less any monies received by the Landlord, with respect to such remainder, from such reletting, as well as the cost to the Landlord of any attorneys' fees or any repairs or other action (including those taken exercising the Landlord's rights under any provision of this Lease) taken by the Landlord in account of such Event of Default;
> . . .
> 13.3.6. pursue any combination of such remedies and/or any other remedy available to the Landlord on account of such Event of Default under applicable law.

The parties dispute which provision of the Lease is applicable in this case. Plaintiff asserts that it relied upon subsection 13.3.2 in seeking damages for Defendant's default. Pl.'s Supp. Response at 2-4; Pl.'s Reply to Def.'s Supp. Response at 1-2. Defendant, in contrast, argues that Plaintiff relied upon subsection 13.3.4. Def.'s Supp. Response at 2. Both parties thus urge an interpretation of the Lease that construes the options under section 13.3 as mutually exclusive—*i.e.*, Plaintiff could choose either to seek remedies under section 13.3.2 or 13.3.4 in enforcing its rights upon default under section 13.3.

The plain language of the Lease, however, unambiguously states that Plaintiff could pursue "any or all" options, including "any combination of such remedies." *See* Lease at §§ 13.3, 13.3.6. The Lease, by its own terms, therefore does not constrain Plaintiff to an "either/or" choice, and in reviewing the pleadings in this case, it is evident that Plaintiff has relied on *both* sections 13.3.2 and 13.3.4—or, more precisely, on a combination of the remedies provided in

both sections. In its Complaint in the instant matter, Plaintiff expressly invoked section 13.3.2 as the basis for its lawsuit. *See* Compl. ¶ 14 (stating that "the Lease provides that upon the occurrence of any Event of Default, [Defendant] shall be liable for 'the entire balance of Rent for the remainder of the Terms to be due an payable . . . ."). However, in its Supplement to its Motion for Default, Plaintiff also invoked section 13.3.4 as a basis of recovery for Defendant's default. *See* Pl.'s Supp. Mot. for Default J. at ¶¶ 1(e), (f) (seeking an award of leasing commission fees and tenant improvement as provided for under section 13.3.4). Accordingly, Plaintiff has relied on both sections 13.3.2 and 13.3.4 in seeking to remedy Defendant's default, consistent with the plain language of the Lease permitting it to do so.

Plaintiff nonetheless urges that the "acceleration clause" in section 13.3.2 controls its remedies in this matter. *See* Pl.'s Supp. Response at 2-4. According to Plaintiff, section 13.3.2 is a valid acceleration clause that permits Plaintiff, upon Defendant's default, to collect all past and future rent in a single damages payment. *Id.* Plaintiff, however, does not direct the Court to any case law from the District of Columbia addressing acceleration clauses in a lease agreement, *see id.*, nor has the Court located any District authority directly on point. The Restatement (Second) of Property—Landlord & Tenant, however, provides guidance on this question. According to the Restatement, a landlord may not terminate a lease agreement *and* enforce a rent acceleration clause:

> The parties may provide in the lease that if the tenant defaults in the payment of rent or fails in some other way to perform his obligations under the lease, the total amount of rent payable during the term of the lease shall immediately become due and payable. If the acceleration clause is enforced, the landlord cannot terminate the lease for the tenant's default that generated the rent acceleration, nor can the landlord terminate the lease for any other default of the tenant, without reimbursing the tenant for the rent he has paid in advance, less any damages the landlord is entitled to collect from the tenant for such default. If the landlord does terminate the lease

> before the acceleration clause is enforced, he may not recover rent for the period after the termination (pursuant to an acceleration clause).

*See* Restatement (Second) of Property—Landlord & Tenant § 12.1 cmt. k. The lease at issue here was terminated by the parties' Surrender Agreement, and the Court is therefore persuaded that the acceleration clause may no longer be enforced by Plaintiff to collect *future rent* owed by Defendant.[2]

Rather, the Court finds that Plaintiff is entitled to collect *damages* as provided for under the Lease. *See Lennon*, 920 F.2d at 1000. The Lease in turn provides that the landlord may re-enter the Leased Premises and relet, holding the tenant liable for lost rent. *See* Lease at § 13.3.4.

---

[2]Even if the Lease had not been terminated, such that an acceleration clause may still be enforced, the Court is not convinced that this acceleration clause is valid. Plaintiff cites 49 Am. Jur. 2d Landlord and Tenant § 583 (2006) for the proposition that, "[w]here the covenant of a lease entitles the landlord to accelerate payment, thus setting the timing of payment in the event of default, the acceleration clause in the lease is valid." Pl.'s Supp. Response at 3. Upon further review of that citation, however, it becomes evident that acceleration clauses are not per se valid, and that courts have in fact found acceleration clauses to be invalid unenforceable penalties where the Landlord is permitted to trigger the clause for any breach of the contract, no matter how trivial. *See id.* Here, the acceleration clause in the parties' Lease may be invoked by Plaintiff "on the occurrence of any Event of Default," Lease at § 13.3, which in turn is defined as including the Tenant's failure to "perform *any* of its obligations under the provisions of this Lease," *id.* at § 13.1 (emphasis added). Accordingly, it appears that the acceleration clause at issue may be invoked for any breach by Defendant and is therefore an unenforceable penalty.

Moreover, the acceleration clause does not provide for any discount to the rent for the remaining term, with the effect that enforcement increases the total amount of the rent that would otherwise be payable under the lease. *See* Restatement (Second) of Property—Landlord & Tenant § 12.1cmt. k (2008). "It may be unconscionable to enforce the clause without a discount, particularly in the case of a lease that has a substantial number of years to run at the time the acceleration takes place." *Id.* Although the Court could enforce an otherwise valid acceleration clause by allowing application of an appropriate discount, *id.*, Plaintiff has not provided the Court with any evidence as to what an appropriate discount rate would be. Plaintiff claims that the amount of damages requested by Plaintiff in its Supplement Motion for Default Judgment already represents a discounted rate—or the "present value owed in damages by [Defendant], *see* Pl.'s Supp. response at 3-4—but it is not clear to the Court how evidence as to the three leases previously obtained by Plaintiff proves the "market value of the Leased Premises." *See id.* at 4.

"[T]he District reads covenants providing for tenant liability for lost rent after a landlord's re-entry as creating [] a damage remedy. Here, the end of the leasehold [] ended the rent obligation, replacing it with liability for damages." *Lennon*, 920 F.2d at 1000. Plaintiff is therefore entitled to damages for breach of the Lease, which equal (a) the amount of rent Defendant would have owed in rent had it remained in possession through the end of the Lease term, plus any reletting expenses; less (b) the security deposit and the rentals that the Plaintiff receives from reletting the Leased Premises (subject to the mitigation doctrine). *See Lennon*, 920 F.2d at 1000.

This interpretation of the Lease is consistent with the law in the District of Columbia:

> District of Columbia law provides a landlord with three options in the event of a wrongful abandonment. First, he may accept the abandonment and thereby terminate the lease. If the landlord does so, the obligation of the tenant to pay future rent ceases, but the tenant is still liable for any damages specified in the contract as a remedy for its breach. Second, the landlord may relet the premises and hold the tenant liable for any deficiency in the rent, without acquiescing in the abandonment. However, under District law, a lease provision giving the re-entering lessor a right to lost rent is construed as creating a right to damages, subject to the mitigation doctrine. The landlord's third option is to allow the premises to remain vacant and to hold the tenant for the full rent.

*Hart v. Vermont Investment Ltd. Ptnship*, 667 A.2d 578, 587 (D.C. 1995) (citations and internal quotation marks omitted). In this case, Plaintiff accepted the abandonment, as evidenced by the Surrender Agreement signed by the parties, and is therefore entitled to damages under the Lease. The Lease provision permitting Plaintiff to relet the Leased Premises and hold the tenant liable for lost rent is properly construed as creating a right to damages.

*B. Damages Owed by Defendant to Plaintiff*

Accordingly, the Court now turns to the damages owed to Plaintiff under the terms of the Lease as a result of Defendant's default. Under District law, "[u]ntil damages are fixed an action [] does not lie and it [is] error to allow recovery for 'rent' accrued after the eviction." *McIntosh*,

120 A.2d at 207. That is, where as here, "the extent [of the loss or deficiency in rent] cannot be determined," it is premature to grant damages as to future lost rent. *Id.* at 207. The law recognizes that, "[i]n determining the amount of a damages award, of course, there must be no double recovery for the same injury 'for a plaintiff is not entitled to be made more than whole unless punitive damages are warranted.'" *Bay General Industries, Inc., v. Johnson*, 418 A.2d 1050, 1057 (D.C. 1980) (quoting *Franklin Invest. Corp. v. Smith*, 383 A.2d 355, 358 (D.C. 1978) (citations omitted)). However, "where the damages [are] made certain by re-letting the premises for the balance of the term at a lower rental," a landlord may collect future "rent"—*i.e.*, damages—under the terms of a written contract. *See McIntosh*, 120 A.2d at 207 n.6 (internal citations omitted).

*1. Future Rent Deficiencies*

Pursuant to *McIntosh*, Plaintiff cannot collect both future rent from Defendant *and* rental income from new tenants to whom Plaintiff has relet the Leased Premises. Admittedly, Plaintiff's request for damages takes into account and deducts the amount of rent Plaintiff has or will receive from reletting (1) a portion of the 10th floor for a six-year term ending in 2012 to Wilshire DC Partners; (2) a portion of the 10th floor for a four-month period ending in July of 2006 to Al Jazeera International (USA) Inc.; and (3) a portion of the 9th floor for a ten-year term ending in 2016 to Future Media Concepts, Inc. *See* Order and Final J. But those lease terms cover only a *portion* of the unexpired term of Defendant's original Lease. Accordingly, there remains a very real possibility that Plaintiff may secure (or already has secured) additional tenants for parts (or all) of the unexpired term, such that Plaintiff may obtain (or has obtained) additional rentals for the Leased Premises at issue—rentals that must be accounted for in any

damage award to Plaintiff.

*a. Rent Deficiencies Incurred from the Date of Termination until Present*

First, as to the period of time since the date the Lease was terminated on January 6, 2006 to the date of this Order, the damages relating to rent deficiencies are now certain and therefore capable of being determined upon proof by Plaintiff. The Court, however, is unable to do so on the current record, as Plaintiff has not provided the Court with the precise amount of rentals obtained throughout this period. For example, one of the three leases disclosed by Plaintiff was for a four-month period, expiring in 2006. It is not clear on the record before the Court whether Plaintiff has since been able to relet those premisses to another tenant, and if so, on what terms. Similarly, the start dates for the three leases that Plaintiff obtained are not clear from the record before the Court. Differing start dates, however, would impact the damages owed to Plaintiff because Defendant would be liable for the full rental payments for those months in which Plaintiff received no rentals, but only liable for the difference in rent for those months in which Plaintiff in fact received rentals. The Court notes that these are some of the very questions it requested additional briefing on in its Order and yet remain unanswered. *See* Order at 24. The pattern of piecemeal, incomplete briefing in this case has the unfortunate effect of delaying recovery by Plaintiff, but the Court cannot award damages without sufficient proof. Plaintiff is therefore requested to provide the Court with the supplemental information necessary to determine the amount of damages owed for the period from the termination of the Lease to the date of this Order, by no later than January 30, 2009. Such submission must provide an itemized and detailed accounting of all rentals obtained by Plaintiff during that time period, as well as any additional reletting expenses Plaintiff believes should be included in a damages

award.

*b. Rent Deficiencies for the Remaining Unexpired Term of the Lease*

Second, as for the remaining unexpired term of the Lease, the Court finds that the damages are not yet certain and it is therefore premature to grant damages as to future deficiencies of rent owed. Defendant, however, argues that Plaintiff must wait until the end of the original lease term before seeking damages for the remaining rent deficiencies. Def.'s Supp. Response at 5-6. The Court disagrees. In *McIntosh*, the Court held that "the action for loss or deficiency of rent was premature because the extent thereof cannot be determined until the end of the term," but qualified that statement by clarifying that "a provision could be drawn so as to make the tenant liable for monthly deficits." 120 A.2d at 207. The parties' Lease does just that. Section 13.3.4 provides that Defendant is liable for rent deficiencies "at the times and in the manner specified by Section 2" of the Lease. Lease at § 13.3.4. Section 2 of the Lease in turn provides for payment in monthly installments. *See id.* at § 2.3 (proscribing when rent due and payable). Accordingly, section 13.3.4 holds Defendant liable for monthly deficits, and Plaintiff can therefore sue periodically as the damages accrue.

*c. Duty to Mitigate*

Both parties agree that Plaintiff has a duty to mitigate damages. *See* Pl.'s Supp. Response at 4-5; Def.'s Supp. Response at 4. Plaintiff, however, contends that the duty to mitigate is an affirmative defense and that Defendant's failure to file an answer and the consequent default judgment entered against it waived Defendant's ability to assert the affirmative defense now. Pl.'s Supp. Response at 5-6. As support for this contention, Plaintiff relies on a single unpublished decision from a district court in another jurisdiction. *See id.*

(citing *Scott v. Ind. State Prison*, Cause No. 3:98CV0473RM, 2000 U.S. Dist. LEXIS 7698 (N.D. Ind. Jan 19, 2000)). Plaintiff has not directed the Court to any decision from this Circuit directly addressing this point, nor has the Court located any such precedent. Whether a defendant in default has waived the affirmative defense of mitigation therefore appears to be one of first impression in this Circuit.

The Court, however, is not persuaded that Defendant has waived its right to assert the mitigation doctrine as to any future rents not yet shown by Plaintiff. This is not a case where Defendant filed an answer that failed to assert an affirmative defense, but rather where Defendant filed no answer and was found liable pursuant to a default judgment. *Cf Demoncratic Republic of Congo v. FG Hemisphere Assocs., LLC.*, 508 F.3d 1062, 1064 (D.C. Cir. 2007) (discussing waiver of personal jurisdiction defense under Federal Rule of Civil Procedure 12) ("In a case such as this, where the defendant's default has removed any occasion for these conventional opening defensive moves, the rule obviously cannot be applied literally."). Defendant has raised the issue of Plaintiff's duty to mitigate in both its Motion to Set Aside Default Judgment and its supplemental briefing now before the Court addressing the amount of damages owed to Plaintiff. Admittedly, Defendant's briefing on this question is perfunctory at best, and the Court has already determined that Defendant has not shown that Plaintiff failed to meet its duty to mitigate as to the three leases previously obtained. But as to the question of future rentals and Plaintiff's efforts to relet the remaining portions of the Leased Premises, the Court is persuaded that Defendants should have an opportunity to challenge the reasonableness of Plaintiff's efforts to relet upon Plaintiff's submission of the requested supplemental information. Moreover, given that Plaintiff has not yet provided the Court with information

concerning future rentals (except for the three leases already discussed), the Court is without sufficient information to determine that Plaintiff has wholly satisfied its duty to mitigate, as Plaintiff urges. *See* Pl.'s Supp. Response at 6. Accordingly, upon submission by Plaintiff of the additional requested information concerning future rents, Defendant shall be permitted to submit a response addressing Plaintiff's duty to mitigate damages as to future rents owed under the Lease, by no later than February 13, 2009.

*2. Damages Relating to Reletting Expenses and Attorneys' Fees and Costs*

The Court previously found that Plaintiff is entitled to certain reletting expenses and attorneys' fees and costs, pursuant to the parties' Lease. *See* Slip. Op. at 19. These amounts have already been incurred and are therefore "fixed" damages that may be properly awarded to Plaintiff at this point. *See McIntosh*, 120 A.2d at 207 n. n.6 (internal citations omitted). The Court therefore finds that Defendant owes Plaintiff $10,315.00 in costs and reasonable attorneys' fees,[3] $102,618.75 in leasing commission fees, and $187,787.00 in tenant improvement costs, as provided for under section 13.3.4 of the Lease. Finally, from these amounts the Court must subtract the security deposit of $26,026.88 already provided by Defendant and retained by Plaintiff. *See Lennon*, 920 F.2d at 1000.

*C. Rent Owed to Plaintiff*

On a final note, as the Court previously held, Defendant is liable for past rent owed during the term of the Lease, and there is no dispute that Plaintiff is entitled to past rent. *See* Slip Op. at 19-20. The lease was terminated pursuant to the parties' Surrender Agreement on January

[3] As the Court noted in its Slip Op. at 20, attorneys' fees and costs are correctly calculated at $10,315.00, not $12,845.00 as originally requested.

6, 2005. *See* Surrender Agreement. Plaintiff represents that Defendant failed to pay rent for June, July, August, September, October, November and December of 2005, and January of 2006, which Defendant has not disputed. Compl. ¶ 9. Under both the terms of the Lease and the law of the District, Plaintiff is entitled to collect all past rent owed by Defendant that accrued during the term of the Lease. According to the Affidavit of Frank Gittleson, Defendant owes Plaintiff $272,808.41 in rental arrearage. Pl.'s Mot. for Default J., Ex. C ("Gittleson Affidavit""). In addition, as the Court previously found in its Order, Plaintiff is entitled to an additional $242,765.25 in late fees, as provided for in Plaintiff's Supplemental Motion for Default. *See* Slip. Op. at 19-20. The Court therefore finds that Defendant owes Plaintiff $272,808.41 in rent accrued but not paid during the term of the Lease, as well as $242,765.25 in late charges as provided for under the Lease, and that Plaintiff is entitled to this payment now.

## III. CONCLUSION

Based on the foregoing, the Court shall DENY-IN-PART and HOLD-IN-ABEYANCE-IN-PART Defendant's [12] Motion to Set Aside Default Judgment, as to the amount and timing of damages. Defendant's Motion is denied with respect to the portion of the Court's Final Default Judgment granting Plaintiff $272,808.41 in rent accrued but not paid during the term of the Lease, $242,765.25 in late charges, $10,315.00 in costs and reasonable attorneys' fees, $102,618.75 in leasing commission fees, and $187,787.00 in tenant improvement costs, less Defendant's $26,026.88 security deposit. The Defendant's Motion is held in abeyance with respect to the portion of the Court's Final Default Judgment granting Plaintiff damages related to future rents owed by Defendant under the terms of the Lease. Plaintiff is required to submit supplemental information necessary to determine the amount of damages owed for the period

from the termination of the Lease to the date of this Order, by no later than January 30, 2009. Such submission must provide an itemized and detailed accounting of all rentals obtained by Plaintiff during that time period, as well as any additional reletting expenses Plaintiff believes should be included in a damages award. Defendant shall file a response to Plaintiff's supplemental information, if any, addressing Plaintiff's duty to mitigate damages as to future rents owed under the Lease, by no later than February 13, 2009, and Plaintiff may file a reply, if any, no later than February 26, 2009. An appropriate Order accompanies this Memorandum Opinion.

Date: December 8, 2008

*/s/*
COLLEEN KOLLAR-KOTELLY
United States District Judge